# Cahall v. Citizens Mutual Building Association.

# Pond v. Citizens Mutual Building Association.

### Real Action in the nature of Ejectment.

1. *Corporate existence; when can not be denied.*—In general, whoever contracts with a corporation, in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the corporate existence, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or a right arising under it, is sought.

2. *General incorporation laws construed.*—The general incorporation laws in force in September, 1871, authorized the formation of a corporation "to purchase, hold and convey real estate; to loan money thereon to the members of the association for building purposes," &c.; and the declaratory act of March 3d, 1870, with reference to building and loan associations, did not abridge the capacity conferred on them, when incorporated under the general law, of taking, holding, disposing of or conveying, by lease or fee, real estate so far as limited by its charter, or as its business might require.

3. *Same; effect of "An act supplementary to the corporation laws of Alabama," approved Nov. 18th, 1868.*—The "act supplementary to the corporation laws of Alabama," approved November 18th, 1868, necessarily repealed all former statutes for the formation of corporations under general laws;

and after its passage every original application or declaration for incorporation, was required to be filed in the office of the Secretary of State; and a copy duly certified by that officer, is legal evidence of the incorporation.

4. *Conveyance of husband's homestead, requisites of.*—Prior to the act of April 23d, 1873, the husband's conveyance of his homestead, joined in by the wife, and witnessed or acknowledged in the manner requisite to pass the wife's real estate, was sufficient; after the passage of that act, such conveyance would not pass the homestead, unless the requirements of the statute were substantially pursued.

5. *Same; defective acknowledgment and certificate to wife's assent, how may be cured.*—Where the wife's signature and assent to the conveyance of the homestead have been defectively acknowledged and certified, she may make a new acknowledgment, with the intent to cure the defect, and such acknowledgment, when properly made and certified, will relate back, rights of third persons not intervening, to the date of the original delivery of the conveyance, without any new delivery.

6. *Notary's certificate; how can not be impeached.*—A notary's certificate to such conveyance, in the form prescribed by statute, can not be impeached, without showing that the wife's signature was forged, or that she was subject to duress, or that fraud was practiced on her, with knowledge of the grantee.

APPEALS from Circuit Court of Mobile.

Tried before Hon. H. T. TOULMIN.

These cases involved the same questions, and were argued and submitted together.

### Cahall v. Citizens Mutual Building Association.

This was a real action in the nature of ejectment brought by the appellee, "The Citizens Mutual Building Association," a domestic corporation, against the appellant, Green B. Cahall, to recover certain premises in the city of Mobile. The case was tried on the pleas of *nul tiel* corporation, and the general issue, and resulted in verdict and judgment for the plaintiff.

On the trial, the plaintiff offered in evidence for the purpose of proving its incorporation, a duly certified copy of the following

### "CHARTER:

" *Declaration for the formation of an Incorporated Company under the provisions of the Statute Laws of Alabama relating to Private Corporations.*

"We the undersigned citizens of Alabama, being desirous of forming a building association and of constituting a body corporate, do make this declaration:

"1. The name and style of this company shall be the 'Citizens Mutual Building Association.'

"2. The purposes and objects of the association are hereby declared to be—to purchase, hold and convey real estate; to loan money thereon to members of the association for build-

ing purposes, to be secured by a lien on the land and buildings; to rent and dispose of such property when acquired, in such form and manner as by the by-laws of the association may be provided.

"3. The capital stock of the association shall be two hundred thousand (200,000) dollars, and shall be divided into four hundred shares of five hundred dollars each. Upon every share of stock subscribed, there shall be paid five dollars as an entrance fee, and five dollars on the first Monday of every month thereafter, until the dissolution of the association, and every member shall be liable on the books of the association for the value of his share or shares subscribed.

"4. The fund thus created, and all accumulations arising from the conduct of the business of the association, shall be applied as provided in the second section hereof, and the association shall proceed to active operations when one hundred shares of the capital stock are subscribed, and the first assessment paid in.

"5. When a lot shall have been purchased with a house built thereon, for every share of stock, or a just equivalent thereto, this association shall be dissolved, and there shall then be an account and settlement of the affairs of the association, with a just division of all the profits and assets, among the shareholders. Provided that a dissolution may be sooner effected by a vote of two-thirds of the shareholders at a meeting held after publication for thirty days in some newspaper published in Mobile, setting forth the object of the meeting.

"6. The association shall have full power to pass all such by-laws, rules and regulations, as may be deemed necessary for the interests and good government thereof, where the same do not conflict with the laws of the State or of the United States; and to alter and amend such by-laws, rules and regulations at pleasure; to have and to use a common seal, and to enjoy such immunities, franchises, privileges and powers in the furtherance of the interests of said association as are guaranteed by the law of Alabama to other corporations of a similar character."

Here follows the signatures of the corporators, and the number of shares held by them respectively.

Appended was the following certificate:

"STATE OF ALABAMA, MOBILE COUNTY.

"I, Harry Pillans, a notary public in and for said county and State, hereby certify that Alfred Goldthwaite, E. M. Underhill, [and so on, naming each one until the names of

[Cahall and Pond v. Citizens Mutual Building Association.]

subscribers to a hundred shares of stock] whose names are signed to the foregoing declaration as stockholders of the number of shares set opposite each name, and all of whom are known to me, acknowledged before me on this day that being informed of the contents of said declaration, they signed and executed the same, setting opposite their names the number of shares of stock held by each, voluntarily on this day. Given under my hand and notarial seal, this 21st day of September, A. D. 1871.

"[Seal.]        HARRY PILLANS, Notary Public M. C."

Then follows this certificate:

"STATE OF ALABAMA, MOBILE COUNTY.

"I, S. G. Stone, clerk of the Probate Court of Mobile county, do hereby certify that the foregoing declaration was this day presented in said court and duly filed according to law.

"In testimony whereof, witness my hand this 21st day of September, A. D. 1871.                S. G. STONE, Clerk."

This was followed by this certificate:

"STATE OF ALABAMA,
SECRETARY OF STATE'S OFFICE,
September 23d, A. D. 1871.

"I hereby certify that the above is a true copy of the original roll now on file in this office.

"[Seal.]                        J. J. PARKER,
"[Stamp.]                      Secretary of State."

Finally the following:

"Received in office for record September 26th, 1871: I hereby certify that the within instrument is duly recorded in Miscellaneous Book H., pp. 346, 348, 349 and 350.

"G. HORTON, Judge.

"Attest: S. G. STONE, Clerk."

Due organization under this charter was shown.

The "defendant objected to the admission of said paper writing in evidence, but his objection was overruled, and he excepted."

The plaintiff then offered in evidence a warranty deed executed by defendant, and his wife, Jane, and the endorsements thereon, whereby in consideration of the sum of twelve hundred dollars, they duly conveyed the premises in controversy to the plaintiff in its corporate name. This deed was dated May 20, 1873, and was signed by both husband and wife, but not attested by witnesses. On the same day they acknowledged its execution before Alfred Goldthwaite, a notary public, who certified it in the form prescribed by

the Code. The deed was duly recorded May 6th, 1879. Appended to the deed was also the following certificate :

"STATE OF ALABAMA, MOBILE COUNTY.

" I, Alfred Goldthwaite, a notary public for Mobile county, hereby certify that on the 20th day of June, 1874, came before me the within named M. J. Cahall, known to me to be the wife of the within named G. B. Cahall, who being by me examined separate and apart from her husband, touching the signature to the within deed, acknowledged that she signed the same of her own free will and accord, and without fear, constraint or persuasion of her husband. In witness whereof I have hereunto set my hand this 20th day of June, 1874.

"ALFRED GOLDTHWAITE, N. P. M. C."

This acknowledgment was subsequently recorded. "The defendant objected to the admission of the deed, with the last acknowledgment of said Martha Jane Cahall along with it." This objection was overruled and the defendant excepted.

Goldthwaite testified that he was a stockholder in the association, chairman of the real estate committee, legal adviser as to titles, and that when he took the first acknowledgment " he was ignorant of the passage of the act of April 23d, 1873; that in June, 1874, after consultation with the president of the association, he called on Mrs. Cahall, informed her of the defective acknowledgment, showed her the deed, and asked if he had read the deed over to her when she signed it, and interrogated her at length about her signature, and she acknowledged it." The defendant then objected to the admission of the deed, on the ground that " the proof does not show that the deed is valid, and because the plaintiff had no authority by law to take such a deed." This objection was overruled, and defendant excepted.

The proof shows that the premises in controversy were not worth $2,000, and were at the time of the trial and had been continuously for eighteen years past, the homestead of appellant, Cahall, on which he and his family resided at the date of both acknowledgments. Cahall became a member of the association after its organization, by buying stock, and obtained about $1,250 from it, which was not the full value of the premises.

Mrs. Cahall testified that Goldthwaite did not show her the deed when he called in June, 1874; that she was not conscious that the effect of what she was doing was to make a new deed; that neither she nor her husband sent for Gold-

thwaite the second time, or gave any assent to the deed at that time.

The by-laws of the association were offered in evidence, one of which reads as follows:

"In case of any shareholder becoming entitled by lot to the benefit of the fund, owns a lot on which he desires to build, the association shall build thereon for him such a house as he may desire to the amount of two thousand dollars—any excess to be furnished by him. Provided, he shall execute to the association a trust deed of such lot, conditioned that he shall pay to the association an annual rent, payable monthly, of fifteen per cent. upon the amount expended by the association; and for the payment of all taxes, and for repairs, with power to the association to enter upon and sell for their security for the rents and fines in arrear, after three months, as specified in the foregoing section. And such shareholder shall have the right at any time to pay to the association the amount expended on such house, and to receive the title to the same at once."

Cahall testified that he had never executed any lease to the association, and was never asked for any, until just before the present suit was brought.

The defendant requested written charges at great length, as to the nature of building and loan associations, their objects and powers; as to contracts *ultra vires;* as to the formalities requisite to convey the homestead of a married man. These charges asserted, in substance, that the deed relied on was void; that its second acknowledgment was invalid; that the corporation, plaintiff, was not legally organized; that it had no power to acquire lands by a deed like the present. All of these charges were refused by the court, and the defendant excepted. The various rulings to which exception was reserved are now assigned as error.

### *Pond v. Citizens Mutual Building Association.*

This case was also a real action in the nature of ejectment, brought by the appellee against the appellant Pond.

The plaintiff relied on a deed from Pond and wife, conveying, for valuable consideration, the premises in controversy directly to plaintiff in its corporate name. This deed was properly executed and acknowledged on the 10th day of January, 1872, and Pond was then a stockholder and member of the association. The same objections were raised in this, as in the preceding case, as to the corporate existence

of the plaintiff, and defense was also attempted on the ground that the contract evidenced by the deed was *ultra vires.*

The court charged the jury " that the execution of the deed to the plaintiff by its corporate name, is an admission of the fact of the corporate existence of plaintiff, and is *prima facie* evidence of the existence of the charter of the company and user under it; that the operations of the plaintiff under it, though they might be inconsistent with the purposes of the charter and power conferred by it, were not grounds of defense in this suit, though they might furnish ground for the forfeiture of the charter, in a direct proceeding.

Exception was reserved to this charge, as also to the refusal to give written charges requested, and of similar purport as those asked and refused in the preceding case.

These rulings are assigned as error.

ALEX. McKINSTRY, and JOHN ELLIOTT, appeared for the appellant in both cases.—The following provisions with reference to the formation of corporations under the general law, besides those contained in the Revised Code, are material to the decision of this case.—Act of August 12th, 1868, Acts p. 34; Act supplementary to the corporation laws of Alabama, approved November 18th, 1868. It is apparent that in the effort to incorporate the Citizens Mutual Building Association, there was a failure to comply with the requirements of the Revised Code of Alabama above cited. Their declaration of incorporation was not filed and recorded in the office of the judge of probate in which their business was to be carried on, as required by the Code of 1867; and if it be held, the recording of a copy from the Secretary of State's office is a substantial compliance with said section 1756, then it is contended that the said declaration is not authenticated for the purposes of proof, as required by section 1761 of the Revised Code of 1867, cited above.

The declaration is also substantially defective in this, that the names of the stockholders and the number of shares held by each are not set out in the declaration, as required by subdivision three of section 1755, of the Code of 1867, above cited.

The declaration is nothing more than a subscription paper for one hundred shares of stock, leaving three hundred shares unowned and to be disposed of after incorporation. The condition upon which the State, by the operation of general laws, confers the franchise of incorporation in cases of this kind, is that the stockholders of the corporation shall be

[Cahall and Pond v. Citizens Mutual Building Association.]

liable for all debts due by it at the time of its dissolution, to the extent of their stock.—Revised Code, 1867, § 1760. Stockholders, becoming such by the purchase of fresh stock after the incorporation was effected, would not be parties to the contract with the State and be bound by the condition. Hence it would seem an essential preliminary to incorporation, that all the stock should be subscribed, so that the names of the stockholders and the number of shares held by each may be set out in the declaration. Only the stockholders participating in the incorporation, by signing the declaration and thus acknowledging themselves holders of the stock, could be held to individual liability for the debts of the corporation on its dissolution. Of course the transferees of stock on the books of the company—Code of Alabama, 1867, § 1758—as to this liability, would stand in the place of original holders.

Another objection that appears fatal to the appellees' claim to incorporation, is that there is no law authorizing the formation of corporations for such purposes and with such powers. The enterprise announced in the declaration is a general traffic in real estate, and the achievment contemplated as the end of their operations is the purchase of four hundred lots, with houses built on them, to be divided among the stockholders.—See sections 4 and 5 of the declaration, *supra*. By our laws corporations are forbidden to purchase, dispose of and convey real estate, except as needful to some other and main business.—Rev. Code, § 1767, subd. 4. The fact that the appellees called themselves a building association, and that the law authorizes the formation of such corporations, does not entitle them to engage in the business of dealing in real estate, or to exercise the powers assumed in their declaration. The objects and powers of building and loan associations had, when the appellees undertook to form themselves into a corporation, been already declared by statute approved March 3d, 1870.

Any material omission in the steps prescribed as conditions precedent to the existence of corporate power, will be fatal, and may be taken advantage of collaterally; otherwise as to conditions subsequent which concern only the government, and can be taken advantage of no where except in a direct proceeding.—*McKelumme v. Woodbury*, 14 Cal. 424; *Harris v. McGregor*, 29 Cal. 124; *Carey v. C. & C. Railroad*, 5 Iowa (Clarke), 359.

The deed of Cahall was absolutely void when made. The acknowledgment and delivery then made were nullities. There was no subsequent delivery, after the pretended ac-

knowledgment before Goldthwaite. He was without authority to make or certify it. The by-laws, which confine the charter powers which are to be exercised in the manner provided by the by-laws, did not confer authority on the corporation to take or hold land under a deed like the present, even if it be valid.

HANNIS TAYLOR, and TAYLOR & McCARTNEY, *contra.* The objection to the admissibility of the articles of incorporation, depends upon the effect of sections 1756–57 of the Revised Code, when construed with reference to the "act supplementary to the corporation laws of Alabama." At the date of this incorporation, September, 1871, these provisions were the only ones which applied to *the method* in which these declarations should be filed. By these sections of the Code it was provided that these declarations should be filed and recorded in the Probate Court of the county, after acknowledgment, &c.; and by the doing of these acts the incorporation was complete. But the supplementary act, approved November 18th, 1868, changed the whole system, by providing that the application should be made to the Secretary of State, and, as soon as a certified copy of the same could be filed in that office, the incorporation should be complete. All conflicting laws are repealed by this act, which must necessarily have suspended the sections 1756–57 of the Code which directly conflicted with the act, because it would have been impossible to have made two original applications at the same time over the same subject-matter. Now, there can be no dispute about the declaration in this case complying with the exact terms of the acts of 1868. But it is contended that in compliance with the Code it should have been filed and recorded in in the Probate Court of Mobile county, before it was offered for enrollment in the Secretary's office. The clerk of the Probate Court certifies, on the 21st of September, 1871, that the declaration was " duly filed according to law " on that day in that court. This certificate does not affirmatively state that it was recorded, but there is no evidence that it was not recorded. So the court must presume that this was done, if it was necessary, because the certificate states that it was filed " according to law." Every court indulges in all reasonable presumptions in favor of official propriety, and in the absence of evidence to the contrary will always presume that a public officer did his duty.

It has been expressly held that minor informalities in the organization of these corporations, under general laws, will

not invalidate, provided the statute be substantially complied with.—*Rogers v. Danby Universalist Society,* 19 Vt. p. 187.

So it is plain that both sets of regulations were complied with, and that the informality, if existing, is too minor in its character to invalidate the proceedings.

2. The defendant is estopped by two facts from denying the existence of the corporation. First, it was expressly proven that he was a member of the corporation; second, that he contracted with it by making a deed to it in its corporate name. That these two things expressly estop a man from denying the existence of a corporation is common learning. Abbott's Digest Law of Corp. pp. 331 and 333; *Eaton et al. v. Aspinwall,* 19 N. Y. p. 119; *Methodist Episcopal Church v. Pickett,* 19 N. A. p. 484; Bigelow on Estoppel, 424; 5 Otto, 667; 4 Otto, 104.

So every charge based upon the idea of the nullity of the corporation, *as to the defendant,* on account of informalities, was properly refused.

3. Rights of third parties have not intervened here, and as to the parties to the deed it has long been settled that its subsequent acknowledgment, made 'to cure a defective execution, will relate back to the day of its original date.—*Hendon v. White,* 52 Ala. 597, and authorities there cited.

4. The other objections as to the internal workings of the corporation could not be secured in ejectment. The defendant can not keep the money and insist on his plea of *ultra vires.*—Abbott on Corp. p. 25, §§ 305–8. The case of *Miller v. Marx,* 55 Ala. disposes of the other objections.

BRICKELL, C. J.—These causes, involving the same questions, were argued and submitted together. The assignments of error, relating to the admission of evidence, the giving and refusal of instructions to the jury, present the same questions—the corporate existence of the appellee, its capacity to hold real estate otherwise than by way of mortgage, or as security for debt, and the sufficiency of the conveyance under which the appellee deduces title to the premises in controversy, to pass the homestead of the grantor.

The conveyance is made directly to the appellant by its corporate name. The general rule is, that whoever contracts with a corporation, in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the existence of the corporation, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or of rights arising under it, is sought.

*Mont. R. R. Co. v. Hurst,* 9 Ala. 513; *Marion Savings Bank v. Dunkin,* 54 Ala. 471; *Lehman, Durr & Co. v. Warner,* in manuscript. The appellant concedes this rule, but insists that it can not be applied to a corporation formed under the provisions of a general statute, requiring certain acts to be done before the corporation can be regarded as in existence, and capable of exercising corporate power. Whatever acts the general statute requires should precede incorporation, the argument is, must be shown affirmatively by the appellee, under the plea of *nul tiel corporation,* or it can not maintain a standing in court. How far in this respect, a distinction can be drawn between a corporation deriving its existence and powers under a special legislative enactment, and a corporation formed under a general enactment, the case does not require us to decide.

The declaration for the formation of this corporation, signed by the corporators, and which became its charter, recites the title of the corporation, the purposes and objects for which it was formed, the amount of its capital stock, the number of shares into which it was divided, the value of each share, and the time of payment by each shareholder of the capital stock, of the amount he had subscribed. The second section or article of the declaration is in these words : " The purposes and objects of the association are hereby declared to be, to purchase, hold and convey real estate ; to loan money thereon to members of the association for building purposes, to be secured by a lien on the land and buildings ; to rent and dispose of such property when acquired, in such form and manner as by the by-laws of the association may be provided." The fourth section, among other things, provides that the association may proceed to active operations when one hundred shares of the capital stock are subscribed and the first assessment paid. The declaration was signed by subscribers for one hundred shares of the stock, acknowledged by the subscribers before a notary public, who duly certified the same, filed in the office of the judge of probate on the 21st day of September, 1871, in the office of the Secretary of State on the 23d day of September, 1871, and a certified copy recorded in the office of the judge of probate on the 26th day of September, 1871.

It was said there was no law then of force authorizing the formation of a corporation for the purposes and with the powers expressed in the second article of the declaration. The Code of 1867, § 1755, expressly authorized the formation and incorporation of building and loan associations, and as

amended by the act of March 3d, 1870, it extended not only to building and loan associations, but to an association *for any lawful enterprise, not inconsistent with the constitution and laws of this State.*—Pamph. Acts, 1869–70, 308. The formation of corporations under general laws, rather than by special legislative enactment, has been for a number of years past a favorite public policy, as indicated by constitutional provision and legislative enactment. The constitution of 1868, interdicted the creation of corporations for other than municipal purposes, by special act, and in any other mode than by a general law. When the statute amendatory of section 1755 was enacted, there were general laws authorizing the formation of nearly every kind of private corporations. A manifest purpose of this statute expressed not only in the general terms we have quoted, but in the express exclusion from its operation of *associations for carrying on gift enterprises, lotteries or games of chance of any kind whatever,* was to authorize the incorporation of any association for any lawful business or enterprise. Nor is there any conflict with, or inconsistency between the purposes and objects of this association as expressed in the second section of the declaration, and the provisions of the act of March 3d, 1870, declaratory of the objects, powers, and rights of building and loan associations.—Pamph. Acts 1869–70, p. 444. A power conferred on every private corporation by the statute then existing, was, "to hold, purchase, dispose of, and convey such real estate as is limited by its charter; and if not so limited, such an amount as the business of the corporation requires." R. C. § 1767. The declaratory act in reference to building and loan associations, does not abridge the capacity conferred by this general statute on them as corporations, when incorporated under the general law, to take, and hold, and dispose of, or convey, by lease for a term, or in fee, real estate, so far as it may be limited by its charter, or as its business may require.

The supposed irregularity in the mode of procedure pursued in the organization of the corporation, is, that the original declaration signed by the stockholders should have been recorded in the office of the judge of probate of the county in which it was proposed to carry on business, and that such record was a condition precedent to corporation existence. The Revised Code of 1867, §§ 1756–7, did require that the declaration should be recorded in the office of the judge of probate, and upon the filing and recording, declared the subscribers became a body corporate, by the name stated therein.

There were similar provisions in reference to towns, religious, educational, benevolent and burial societies, mining, quarrying, and manufacturing associations, &c. While turnpike, plank, macadamized, and railroad companies, steamship companies and banking associations were required to file the declarations, which became their charters in connection with the general statutes, in the office of the Secretary of State. These statutory regulations existing, requiring as to some corporations that the declaration should be filed in the office of the judge of probate of the county in which the corporation was to be located, and as to others, that it should be filed in the office of the Secretary of State, the act of November 18th, 1868, entitled " An act supplementary to the corporation laws of Alabama," was enacted.—Pamph. Acts 1868, p. 349. The first section requires the application for a charter *under any of the general incorporation laws of this State,* to be filed with the Secretary of State, and that a certified copy shall be retained for record by the officer before whom such application is made. The filing of the certificate with the Secretary of State, constituted the persons named a body corporate. The fourth section requires all corporations previously formed under the general laws, within sixty days after the passage of the act, to file their certificate of incorporation with the Secretary of State. That the legislature intended this statute as a substitute for all former statutes relating to any and every corporation formed under the general laws, whatever was the purpose of its organization, or the business it was to pursue, is manifest. The difference in former regulations, that some corporations must have filed the declaration or application, (for each term, as used in the Revised Code, and in this statute, means the same thing,) in the office of the judge of probate, and some in the office of the Secretary of State, should be obliterated. The office of the Secretary of State was to become and remain the repository of the original of every declaration or application for incorporation under the general laws. When the declaration or application is for incorporation under a general law which had required the filing and recording in the office of the judge of probate, the judge was required to retain a copy certified by the Secretary of State for record. A subsequent affirmative statute revising the subject-matter of former statutes, and intended as a substitute for them, is a repeal of the former statutes, though containing no express words to that effect, it is said upon principles well founded in law, reason, and common sense.—Johnson's Estate, 33 Penn. St.

511; *Wakefield v. Phelps*, 37 N. H. 295. The act of 1868, not only prescribes a new rule as to the place in which the original declaration of incorporation must be filed, but it extends the rule to the corporations already formed, and in express terms repeals "all acts or parts of acts in conflict with it." We can not doubt that the original declaration of incorporation was properly filed in the office of Secretary of State. The copy certified by the Secretary was properly filed and recorded in the office of the judge of probate. A copy of the declaration certified by the Secretary of State, by the third section of the act of 1868, it is declared shall "be received in all courts and places as the legal evidence of the incorporation of such company."

The constitution of 1868 forbade the mortgage or other alienation of the homestead, by the owner thereof, if a married man, without the voluntary signature and assent of his wife. The construction which this clause of the constitution received, was, that a conveyance of the homestead by the husband to which the wife did not give her voluntary assent and signature was void at law or in equity, and would not support ejectment against the husband, nor operate against a subsequent conveyance, to which the wife did give her assent and signature.—*McGuire v. Van Pelt*, 55 Ala. 344. The mode in which the wife should express her assent, and give her signature to the conveyance of the husband, was not prescribed by the constitution. It was left as a matter of legislative regulation. The act of April 23d, 1873, (Pamph. Acts 1872–3, p. 64,) first declared the mode in which the voluntary assent and signature of the wife must be shown. It was settled by several decisions, that if the conveyance was executed before this statute, and was acknowledged, or its execution proved, and certified, in the mode the statute declared for passing the wife's real estate, the voluntary signature and assent of the wife was sufficiently shown. In this mode the present deed was acknowledged and certified on the second day of May, 1873, in ignorance of the existence of the act of April 23d, 1873. Subsequently, on the 20th June, 1874, the deed was acknowledged before a notary public by the wife, on a privy examination, and certified by him in the form prescribed. The act of April 23d, 1873, conferred on a supreme, or circuit court judge, chancellor or probate judge, authority to take and certify the examination and acknowledgment of the wife. But it was in this respect amended by the act of December 13th, 1873, (Pamph. Acts 1873, p. 53,) and the like authority was conferred on a no-

[Cahall and Pond v. Citizens Mutual Building Association.]

tary public, or a justice of the peace. The proposition now relied on by the appellant, is, that as the deed was void in its inception, the subsequent examination and acknowledgment of the wife, can not have relation to the day of its execution, nor could it give the deed validity, unless there had been by the husband (of which there was no evidence) a new delivery of it.

The act of April 23d, 1873, is so far as it declares, the mode in which the assent and signature of the wife to the husband's conveyance of the homestead, is required to be shown, is of the same character as statutes which enable *femes covert* to convey their real estate, or to relinquish their inchoate rights of dower. The mode prescribed by the statute must be substantially pursued, or the conveyance is inoperative. But if the wife joins in the execution of the conveyance of the husband, and it is not acknowledged or certified in the mode the statute prescribes, the defect may be cured by her making a new acknowledgment in proper form, with a knowledge of the defect and the intent to cure it.—Bishop on Mar. Women, § 597. The same rule should be applied to conveyances of the homestead. Neither the constitution, nor the statutes appoint any particular time within which the wife shall give her assent and signature to the conveyance of the husband, nor does the statute appoint any particular time in which her privy examination and acknowledgment shall be taken and certified. The delivery of the conveyance by the husband may precede or may be subsequent, or cotemporaneous with the signature and assent of the wife, and her examination and acknowledgment. If it precedes, it is necessarily in its nature, whether so expressed or not, conditional, dependent for its effect and operation on the subsequent signature and assent of the wife, the privy examination, acknowledgment, and certificate by the proper officer. When these are obtained, the delivery becomes absolute, the conveyance is perfect, and has relation, the rights of third persons not having intervened, to the delivery by the husband.—*Johnson v. McGehee*, 1 Ala. 186; *Nelson v. Holly*, 50 Ala. 3; *Hendon v. White*, 52 Ala. 597. The privy examination and acknowledgment of the wife, and the certificate thereof in proper form, made with her knowledge, with the intent to cure the defects of the conveyance, imparted validity to it, and it was operative to pass to the appellant, the premises in controversy.

The certificate of the notary could not be impeached, without showing the signature of the wife was forged, or

that she was subjected to duress, or that fraud was practiced on her, with the knowledge of the grantee—*Miller v. Marx,* 55 Ala. 322.

The several rulings of the Circuit Court substantially conform to these views, and we find in them no error prejudicial to the appellant. Each judgment must therefore be affirmed.