WESTERN INVESTMENT COMPANY vs DAVIS ET AL.

Opinion rendered September 26, 1907.

(104 S. W. Rep. 573).

1. *Statutes—Construction by State's Supreme Court—Following Decision of Arkansas Court.*

The United States Court of Appeals of the Indian Territory will follow the decision of the Supreme Court of Arkansas, that in accordance with the Arkansas General incorporation act applicable to the Indian Territory, the promoters of a corporation cannot do business as a corporation until their articles are filed in the office of the Secretary of State (clerk of Court of appeals of Indian Territory).

2. *Same.*

Where a corporation is organized in the Indian Territory under the statutes of Arkansas which are made applicable to such territory, whether the promoters are liable as partners for purchase money made before the filing of their articles with the Clerk of the Court of Appeals is a question as to which the Indian Territory Court of Appeals is not bound by the decisions of the Supreme Court of Arkansas, but is entitled to determine in accordance with the weight of authority.

3. *Organization of Corporations—Business Before Incorporation.*

Transaction of business as a corporation, by the promoters of a corporation, before the corporation was legally authorized to do so, was a matter for which the state might call it to account, but which did not affect the legal existence of the corporation after the organization had been completed.

4. *Same—Corporate Capacity—Denial Estopped.*

Where plaintiff, through its manager, took part in the organization of a corporation, subscribed for stock therein, and sold goods to it as a corporation before the organization was completed, the purchases being made by the promoters in good faith, without fraud, plaintiff was estopped to deny the legal existence of the corporation and to charge the promoters as partners.

Error to the United States Court for the Western District of the Indian Territory; before Justice Louis Sulzbacher, May 2, 1905.

Action by the Western Investment Company against Frank M. Davis and others. From a judgment for defendants, plaintiff brings error. Affirmed.

On November 28, 1903, plaintiff below, plaintiff in error here, filed its complaint, and alleged that it was a corporation duly organized; that the defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight are and were engaged in business in the town of Coweta, Western District of Indian Territory, under the name and style of Coweta Cotton Milling Company. Plaintiff for cause of action against defendants states that said Coweta Cotton Milling Company is indebted to it in the sum of $2,933.88 for lumber, hardware, and other materials sold and delivered to the said Coweta Cotton Milling Company at its special instance and request; that said lumber, hardware, and other materials were used in the construction and erection of a ginhouse and other necessary outbuildings belonging to said gin-house, which said buildings are situated in the town of Coweta, Western District of Indian Territory, and on ground lying on the east side of the tracks of the Missouri, Kansas & Texas Railway Company, and adjoining said railway company's depot grounds; that defendants are the owners of the above-described buildings and ground; that on the 2d day of May, 1903, and within 90 days of furnishing said lumber and other materials, the plaintiff filed in the United States clerk's office for the Western District of Indian Territory a just and true account of all payments due or owing to it, after allowing all proper credits to which the defendants were entitled, and containing a correct description of all the property to be charged with a lien, verified by affidavit as required by law; that said sum of $2,933.88 is past due and unpaid; that plaintiff has a lien on said above-described property to secure the payment of said sum, and asks judgment for same, with interest. For a further cause of action against defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G.

Knight, doing business under the firm name and style of Coweta Cotton Milling Company, the said company is indebted to plaintiff in the sum of $2,221.60 for goods, wares, and merchandise sold and delivered at its special instance and request; that said account is past due and unpaid. Therefore plaintiff prays judgment against defendants for $5,145.48. On December 24, 1903, defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight, and Coweta Cotton Milling Company filed their answer, and state that they admit that the Western Investment Company is a corporation duly organized; but deny that defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight are or were engaged in business in the said town of Coweta, Western District of Indian Territory, under the firm name and style of Coweta Cotton & Milling Company, and allege that said Coweta Cotton & Milling Company is and was at the time of the transaction hereinafter named a corporation duly organized and doing business near the town of Coweta, under and by virtue of an act of the Congress of the United States and the laws governing corporations in force in the Indian Territory, and have complied with the laws governing corporations in the said Indian Territory. Defendants deny that the Coweta Cotton & Milling Company, or any of the other defendants named in said complaint, are indebted to the plaintiff in the sum of $2,933.88 for lumber, hardware, and other materials sold and delivered to said Coweta Cotton & Milling Company at its special instance and request as alleged in the first cause of action in plaintiff's complaint, and especially deny that defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight, or either or any of them, are indebted to the plaintiff in any sum whatsoever, and deny that said lumber, hardware, and other materials were used in the erection of the ginhouse and outbuildings belonging to said ginhouse, situated on a piece of ground on the east side of the tracks of the Missouri, Kansas & Texas

Railway Company, adjoining said railway company's depot grounds, and deny that the said defendant Coweta Cotton & Milling Company is the owner of the above-described building and tract of land.

Further answering, defendants deny that on the 2d day of May, 1903, and within 90 days of furnishing of said lumber, hardware, and other materials, there was filed in the United States clerk's office for the Western District of Indian Territory a just and true account of all payments owing to it, after allowing all proper credits to which the defendants were entitled, and containing a correct description of the property to be charged with a lien, verified by affidavit as required by law, and deny that the said sum of $2,933.88 is past due and unpaid, and deny that plaintiff has a lien on said above described property to secure the payment of said sum. Further answering, defendants say that the Coweta Cotton & Milling Company is a corporation duly organized and existing under and by virtue of the laws in force in the Indian Territory, and was such corporation at the time of the happening of the events and the occurrence of the transactions alleged in said complaint, and deny that defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight, or either or any of them, were ever engaged as a partnership or firm or individually in business near said town of Coweta, Ind. Ter., but allege that the said Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight were stockholders in the Coweta Cotton & Milling Company as a corporation, that all the business they did near the town of Coweta, and all the transactions they had with the plaintiff in any capacity was in their corporate capacity as the Coweta Cotton & Milling Company, and that if any lumber or other materials, or goods, wares, and merchandise were purchased of the plaintiff, or furnished by the plaintiff, it was to the Coweta Cotton & Milling Company as a corporation, and in its corporate capacity, and

that in all the transactions had with the plaintiff, the plaintiff treated the Coweta Cotton & Milling Company as a corporation, and recognized it as such, and did business with it as such, and as such corporation alone, and that the said Western Investment Company assisted in the incorporation of said defendant Coweta Cotton & Milling Company as a corporation, and subscribed for and took stock therein in the sum of $2,000, in the name of Frank M. Davis as trustee, and the said plaintiff has paid on said stock as a stockholder therein the sum of $1,150 through its trustee, Frank M. Davis, and has credited itself on the books of said plaintiff with the said sum, and is now and has been since the incorporation of said defendant a stockholder therein, and in the filing of the mechanic's lien in this cause the said plaintiff, through its officers and agents, recognized the said Coweta Cotton & Milling Company as a corporation, and has held the said defendant out as a corporation, and has enjoyed the benefits of the stock held by it in the said corporation and of the interest in said corporation represented by its stock as an incorporator, and is now estopped in law from questioning or denying the due and legal incorporation of said defendant, or treating it in any other capacity than as a corporation, and is now estopped and precluded in law from treating the said Coweta Cotton & Milling Company, defendant herein, as a partnership, or its stockholders as partners.

Further answering, defendants say that the pretended material furnished and labor performed by the plaintiff in the construction of the ginhouse of the said defendant Coweta Cotton & Milling Company were furnished and performed, if at all, by the plaintiff, under contract with the Coweta Cotton & Milling Company as a corporation, and in no other capacity, and that the last item of said material was alleged to have been furnished by the plaintiff and the labor performed therein was furnished and performed, and the said building completed, in October, 1902, and that no other labor or material was

furnished or performed by the plaintiff after said date, and no mechanic's lien or just and true account of the furnishing of said lumber and other materials and the performance of labor was filed in the United States clerk's office in the Western District of Indian Territory, or just and true account of all payments due and owing to it, after allowing all proper credits thereon, containing a correct description of all the property to be charged with a lien, verified by affidavit as required by law, within 90 days after the furnishing of said lumber and other materials and labor, and by reason thereof the said plaintiff has and possessed no lien on the property of the defendants for such lumber and materials so furnished and such labor performed. Further answering, defendants say that on or about the 1st day of December, 1902, the plaintiff furnished certain lumber and other material for the construction and erection of an outbuilding, to wit, a dwelling house for the engineer of the defendant to live in; that said lumber and material was furnished separately, and was separate and independent from the lumber and material furnished defendants for its ginhouse, and had no connection therewith, and the same was completed during the month of December, 1902; that no item of labor, lumber, or other material was furnished defendants by the plaintiff thereafter, and that the plaintiff failed within 90 days after the furnishing of the last item of labor, lumber, or other material to file in the United States clerk's office for the Western District of Indian Territory, a just and true account of all payments due and owing to it after allowing all proper credits to which the defendant is entitled, containing a correct description of the property to be charged with a lien, verified by affidavit as required by law, and never attempted to file such statement, or any statement whatever, or lien whatever, until the 2d day of May, 1903, at which time no right of lien existed by reason of the furnishing of

lumber and other materials and labor in the construction of said dwelling house.

Defendants Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight allege that they organized and incorporated the Coweta Cotton & Milling Company as a corporation, and operated and did business as such corporation in good faith and with no purpose or intention to defraud and defeat creditors thereby, or by reason of any irregularity or defect in its corporation, and that they themselves, the public, as well as the plaintiff herein, at all times and in all business relations treated the defendant Coweta Cotton & Milling Company as a corporation, and Frank M. Davis, Robert S. Davis, Walter Mann, and J. G. Knight are not indebted for goods, wares, and merchandise sold and delivered to them by its special instance or request in the sum of $2,221.60, as alleged in plaintiff's second cause of action, nor is the same past due and wholly unpaid, nor are they or either indebted as alleged in the first count in the sum of $2,933.88, and ask that they be dismissed with their costs.

On the 2d day of May, 1905, the case came on for trial, and on the 3d day of May the jury returned the following verdict: "We, the jury, find the issues for the defendant. Jerry Fisher, Foreman." Thereafter, on the same day, the plaintiff filed its motion for a new trial, which was overruled by the court, and judgment was rendered for the defendant upon the verdict, and plaintiff was allowed 90 days to prepare and file bill of exceptions. On September 20, 1905, a petition for writ of error, with assignments of error, was filed and allowed, and the case brought to this court.

*N. B. Maxey, R. C. Allen*, and *W. T. Hunt*, for plaintiff in error.

*Cravens & Rutherford, N. A. Gibson, W. T. Hutchings, Geo. A. Murphy*, and *W. P. Z. German*, for defendants in error.

TOWNSEND, J. (after stating the facts as above). The plaintiff in error has filed 17 assignments of error, and states as follows: "There are three questions in this case that in our judgment will settle the case, and upon the determination of these questions this case will be reversed or affirmed. There are a number of errors assigned, but they all go to these three questions. Hence, in our argument and brief, we shall not take the errors up seriatim, but shall group them in such manner as in our judgment will best present the point at issue." Then says: "First is the question of whether the Coweta Cotton & Milling Company is a corporation in this case. Second, was the Coweta Cotton & Milling Company a corporation at the time the account sued upon was contracted? Third, conceding that it was a de facto corporation after it filed its articles with the clerk of the Court of Appeals, were the defendants not liable as partners for that part of the debt contracted prior to the filing of its articles with the clerk of the Court of Appeals?" In support of its first proposition, the plaintiff in error claims that the case of Owen et al. vs Shepard et al., 59 Fed. 746, 8 C. C. A. 244, is exactly in point and decisive of this case. It is a case from the Circuit Court of Appeals for the Eighth Circuit, decided by Judge Caldwell. It appears from the statement of facts that two persons endeavored to secure an incorporation under the laws of the state of Illinois. Judge Caldwell says: "The evidence required by the statute of Illinois to prove the existence of a corporation is the certificate of the Secretary of State of the complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and seal of state, and, in addition to this, proof that such copy had been recorded in the office of the recorder of deeds of the county where the principal office of the company is located.        *        *        *
The company was not shown to be either a defacto or a de

jure corporation.    *    *    *    One cannot wink so hard as not to see that this so-called corporation was one of those elusive, evanescent, will-o'-the-wisp corporations existing only in name, and a fraud upon the laws of the state where it was attempted to be formed, and equally a fraud on the states or territories and their citizens in which it carried on its business"—and affirms the judgment of the court below, holding the individuals liable as partners, on the ground that there was no corporation existing, and the attempt made to secure a corporation was a fraud upon the laws of the state where it was attempted to be formed, and also holding the company was not shown to be either a de facto or a de jure corporation. Plaintiff in error cites a number of cases from different states which it claims supports its contention. We have examined all of those cases which we have been able to secure, and they hold that there was either no corporation, or that the goods sued for were sold to the individual partners, and no credit given to the pretended corporation. The question as to the existence of a de facto corporation does not seem to have been discussed in those cases, nor do we find in those cases any evidence of continued dealings between the plaintiff and the defendant as a corporation, or that credit in those dealings was given to the corporation, and not to the individual stockholders, at the time the transactions occurred.

In support of his second proposition, plaintiff in error cites the case of Garnett et al vs Richardson et al., 33 Ark. 144, which says: "An association of persons cannot do business as a corporation until their articles of association are filed in the office of the Secretary of State as provided by law. For purchases made by them before then they are personally liable as partners." Plaintiff in error also cites the case of Hurt vs Salisbury, 55 Mo. 310, which holds that: "Where an action was brought against the directors upon the ground that the association was not incorporated at the time the note

sued upon was given, and that the directors were therefore individually liable, it appeared that the association at the time the note was given was fully incorporated in every respect, except that it had failed to file the articles of incorporation with the Secretary of State as the statute required, and it was held that the directors were individually liable." It also cites section 16 of Beach on Private Corporations, and section 162, in which the case of Garnett vs Richardson, supra, is quoted with approval; and also cites cases from Missouri, Louisiana, Iowa, Indiana, and Nebraska as supporting its contention. Plaintiff in error quotes the language of Judge Caldwell as follows: "The defendants probably made an abortive effort to form a corporation under the laws of Illinois, but it is wholly probable that the artificial being which they attempted to bring into existence never had a legal birth." Plaintiff in error states that the defendants commenced to erect the cotton gin in this case about the 1st of July, 1902, and a large part of the account sued on was contracted during the months of July and August, and nearly all of the account was made before December 2, 1902. No attempt was made to incorporate until September 3, 1902, when the articles were drawn up. They were not signed and sworn to by all of the directors until December, 1902, and they were not filed with the clerk of the Court of Appeals until the 22d day of December, 1902. This was all they ever did toward incorporating, and plaintiff in error contends that the foregoing cases establish that the Coweta Cotton & Milling Company was not a corporation at the time the account sued upon was contracted.

Upon the third proposition, it is suggested by plaintiff in error that "conceding, for the sake of argument, that the Coweta Cotton & Milling Company was a de facto corporation after it had filed its articles with the clerk of the Court of Appeals, were the defendants not liable as partners for that part of the debt contracted prior to the filing of its articles

with the clerk of the Court of Appeals?" Plaintiff in error contends that this question should be answered in the affirmative, because it is expressly decided in the case of Garnett vs Richardson, 35 Ark. 144, and the other Arkansas cases cited, as well as the Illinois and New York cases, that the stockholders are liable as partners until their corporation is fully completed, that it was unnecessary to cite further authority on this proposition, and that it was error for the court to instruct the jury to find the issues for the defendants as was done in this case. Defendants in error contend that all the lumber, hardware, and other materials, together with all goods, wares, and merchandise that were purchased from the plaintiff, were purchased by the Coweta Cotton & Milling Company as a corporation, and that the credit was given to the Coweta Cotton & Milling Company as a corporation, and that no item in the account whatever was charged against these defendants individually. Defendants in error state that it is shown by the account filed by the plaintiff that the business between the two corporations continued until some time in February or March, 1903; that the aggregate of the business done between the two corporations amounted to somewhere between $25,000 and $40,000, and that there is no evidence whatever of any transactions between the plaintiff and these defendants as individuals; that there is no evidence that these individual defendants ever received or had the benefit of any of the property sold by the plaintiff to the Coweta Cotton & Milling Company, and that there was no evidence whatever of any charge being made upon the books of the plaintiff against these defendants for the purchase price of any of the property so sold to the Coweta Cotton & Milling Company. They claim that when these purchases were first made, it was done with the full knowledge of the plaintiff that they were being made for a corporation to be formed as the Coweta Cotton & Milling Company; that the defendants first determined at a meeting

held some time in June, 1902, to organize a corporation an-
construct a gin; that the articles of association were prepared
and signed on the 3d day of September, and all steps taken
as required by the statute, and that on the 22d day of De-
cember, 1902, the articles were filed with the clerk of the Court
of Appeals in the Indian Territory; that prior to that date
they were a de facto corporation; that the plaintiff in this case,
by reason of the business transacted between the plaintiff
and the Coweta Cotton & Milling Company, and the charge
made by the plaintiff for all goods sold to the Coweta Cotton
& Milling Company, and by reason of the further fact that
the vice president and general manager of the plaintiff sub-
scribed stock in his own name as trustee for the plaintiff, is
estopped from denying that the Coweta Cotton & Milling
Company was a corporation, and that, therefore, no action
can be maintained against these defendants individually.

Defendants in error, to establish their contention as
above stated, introduced as a witness Mr. F. M. Davis, and
asked him these questions: "Q. What position, if any,
did you ever occupy with reference to plaintiff, the Western
Investment Company? A. General manager. Q. How long
were you manager of that corporation? A. From July, 1901,
to the 25th or 27th of March, 1903. . Q. Who were the officers
of the Western Investment Company during the time you
were general manager? . A. Mr. Naylor was president, Mr.
Wallace, I think, was treasurer, and Mr. Gibbons was secretary,
and I was vice president and general manager. Q. You
were vice president and general manager? A. Yes, sir.
Q. Now, what did you do out there in connection with your
office of vice president and general manager for the company?
A. I bought the merchandise, I bought the lots on which
the buildings were located, I built the buildings; that is, I
caused it to be done, I mean. Q. I understand. A. Well,
my first move was to buy Mr. Simmons out. Q. He was

your predecessor there? A. He was my predecessor, yes, sir; bought his buildings, goods, and lots. Q. For whom? A. The Western Investment Company. Q. What else did you do? A. Built about 35—nearly $24,000 worth of buildings for them. I bought some real estate in the town of Coweta, amounting to probably $1,000. I leased quite a—9,000 acres, I think it was—of land, put improvements on it. I won't say it was that much. I don't think it was. I think it was about 5,000 acres. Q. Who else, other than yourself, if anybody, looked after the business of the Western Investment Company? A. Why, no one particularly except the employes. Q. Under you? A. Yes, sir. Q. What did you do with reference to the employment of help and buying the merchandise from time to time that was needed there? A. I bought it. Q. How is that? A. I bought the merchandise and hired the help. Q. Who wrote the checks and made the payments of salaries and the payments for bills of goods as they came due? A. I did. Q. How is that? A. I instituted the proceedings to organize a gin company at Coweta, being necessary for our business. Q. Now, what did you do? A. I consulted with numerous parties in regard to building a gin there, finally, but Mr. Knight and Mr. Walter Mann first came out there, and wanted to know what the company would do. I told them as far as I was concerned I had no money to put in it, but I was satisfied that the directors of the Western Investment Company would take $1,000 stock, if they would put up the balance, one share, $2,000. That was the foundation of it. Well, Mr. Knight and Mr. Robert Davis and Mr. Walter Mann and myself, I supposed, representing the Western Investment Company—By Mr. Maxey: I object to what he supposed. By the Court: Don't make any suppositions. By the Witness: Well, I was representing the Western Investment Company, took $1,000 stock in it. By Mr. Murphey:

Q. How much? A. One-fifth of the stock; be $2,000. Q. The company was organized with a capital stock of $10,000? A. $10,000; yes, sir. Q. Now, when was this first meeting had with Mr. Knight and Mr. Mann and yourself? A. Why, I think the first talk about it was about June.     *     *     * Q. Now, what did you do looking to the organization of the company further? A. Why, I agreed to take this amount of stock in it, and also agreed to furnish the material as they put up the building. Q. For whom did you agree? A. For whom? By Mr. Maxey: I object to that. Let him state just what was done, and that is a conclusion, for whom he agreed. By Mr. Murphey: Who was he acting for? By the Witness: For the Western Investment Company, I agreed to furnish it for.     *     *     * Q. Now Mr. Davis, had you consulted with the directors of the Western Investment Company, relative to the necessity of organizing a gin company there and making it a corporation, taking stock in it? A. Individually; yes, sir. Q. With whom? A. Consulted with Mr. Edwards and with Mr. Wallace, but I don't think I ever had any talk with Mr. Naylor myself, but I did with Mr. Wallace and Mr. Edwards frequently.     *     *     * Q. What, if any, instructions did they give you with reference to taking stock for the Western Investment Company in the Coweta Cotton & Milling Company? By Mr. Maxey: I object for the same reason that I have already urged, and save an exception. By the Witness: They done as they done in all questions of that kind—they advised to go on and do the best I could. By Mr. Murphey: Q. Did you or did you not discuss with these directors about taking stock, and, if so, what was the nature of that talk? A. Yes, sir; I consulted them about taking stock. Q. What did they say to you? A. Why, they acquiesced in my taking the stock.     *     * Q. What did they say to you about taking stock, if anything, for the Western Investment Company, and in whose name

it should be taken? A. The talk was about taking it in the Western, and the claim was raised that, being a corporation ourselves, we couldn't take a stock originally in incorporating another corporation. That was the conclusion we came to in the conversation that day with one or two members of the board. Q. Did they conclude any further about the stock? A. They said I would take it in my name.     *     *     * Q. Now, what did you toward getting the gin company started there, the business started? A. Why, I done all I could in a business way, the same as I would do in any other business transactions. Q. Well, were these goods sold by you to the Coweta Cotton & Milling Company? A. Yes, sir. Q. And what did they do with them? They was used in paying the help and building the buildings. I furnished nearly all the lumber that was used in the building. Q. For whom? A. For the Coweta Cotton & Milling Company. Q. Did you individually furnish it? A. No, sir; I furnished it as the Western Investment Company. Q. And did you open up an account as the manager and bookkeeper of the Western Investment Company with them for this material? A. Yes, sir. Q. Who did you charge the material to? A. Well, I charged it to the Coweta Cotton & Gin Company. We had it called 'gin company.' Q. Did you make any charges at all against R. S. Davis, F. M. Davis, and J. G. Knight, individually or as a partnership? A. No.     *     *     * Q. Did the individual members of R. S. Davis, F. M. Davis, and J. G. Knight or as a partnership, or Walter Mann, have an account with your company, the Western Investment Company? By the Witness: Nothing in connection with this business. By Mr. Murphey: Q. Was the building completed and the machinery placed in place for the Coweta Cotton & Milling Company? A. Yes, sir. Q. When did they open out and do business there? A. How do you mean, to commence building? Q. No, sir; running the gin? A.

My recollection is about the 1st of October. I don't know exactly about that; about the 1st. Q. In 1902? A. Of 1902; yes, sir. Q. How long did they continue to do business there as the Coweta Cotton & Milling Company? A. The balance of the time that I was managing the Western Investment Company. Q. Up to March, 1903? A. Yes, sir; up to the 27th of March, 1903. Q. In what name did they do business there? A. The Coweta Cotton & Milling Company. *   *   *   Q. Mr. Davis, I will ask you who owned and used and got the benefit of the goods, the material and whatever you sold them, that was received by the Coweta Cotton & Milling Company? A. Why, the Coweta Cotton & Milling Company got the benefit of it. Q. Did the Western Investment Company do any business with the Coweta Cotton & Milling Company during the time it was in existence there? A. Did the Western Investment Company? Is that the question? Yes, sir; they did. Q. Just tell the court and jury what was the volume of that business? A. Why, counting the money that was paid out for the one, I suppose, $25,000 to $30,000.   *   *   *   Q. You may examine the blank I hand you, identified as Defendant's Exhibit H, and state what this is? A. That is an order on the Western Investment Company, for the Coweta Cotton & Milling Company, to pay for a load of cotton, when it was properly filled up. *   *   *   Q. These checks are signed J. G. Knight, Secretary, Coweta Cotton & Milling Company, J. G. Knight, Secretary? A. Yes, sir.   *   *   *   'Coweta, I. T., ———, 190—, Western Investment Co., Please pay ——— for ——— pounds seed cotton, at ———. Coweta Cotton and Milling Company, per ———.' By the Court: No amount there, or anything at all. By Mr. Murphey: No, sir; we haven't anything that is filed up. This was the form used. *   *   *   . By Mr. Murphey: Now, these various checks that were issued—I do not want to incumber the record

with all of them—but I would like to introduce two or three to the jury. They are all signed alike. You can look at them if you want to. By Mr. Maxey: What is it you want to show by them—that it was signed by J. G. Knight, Secretary? By Mr. Murphey: Yes, sir. By Mr. Maxey: Just let the record show that. No use introducing any.    *    *    *
Q. You never had instruction from the Western Investment Company to take stock for the Western Investment Company in your name? A. No, sir; I never had instruction to, but I had an understanding with the different members, with some of the members of the board of directors to do it; always understood, as I understood it, that it belonged to the Western Investment Company. Q. Mr. Davis, I will ask you whether or not you, in your relation to the Coweta Cotton & Milling Company, were acting in good faith in the belief that you were a corporation? A. Yes, sir; I was.    *    *    *
Q. State, Mr. Davis, whether, as manager of the Western Investment Company, in the organization of the Coweta Cotton & Milling Company, and in your relations with it while it existed, it was treated as a corporation or as a partnership? A. It was treated as a corporation. Q. Did the Western Investment Company, plaintiff, know, after it had been organized, that you had taken stock in it in your name for their benefit? A. Yes, sir; they knew it. Q. How did they know it? A. By conversation with the directors.    *    .    *    *    Q. Now, Mr. Davis, you say that the Western Investment Company knew that you had taken stock in the Coweta Cotton & Milling Company in your name for the Western Investment Company? A. I said the individual members and directors individually knew it, the same as they knew all the transactions that I made.    *    *    *    Q. What did they say? A. Well, I couldn't say what they said in regard to it. Said I suppose, it was all right. If they had objected to it, I certainly wouldn't have done it. Q. You hadn't done it then?

A. Not before I consulted them I hadn't."

Defendant in error also introduced James G. Knight as a witness: "Q. Your name is James G. Knight? A. James G. Knight. Q. What office did you hold in the Coweta Cotton & Milling Company? A. Secretary and manager. * * * Q. What conversations, if any, did you have with any of the representatives of the Western Investment Company, plaintiff, about the gin proposition and the incorporation, if any? A. Had a conversation with Mr. Naylor, in which he wanted to know why I didn't let him in on it. I told him I understood Mr. Davis had already taken one-fifth, and that was letting the Western Investment Company in, as Davis was taking it for them, and he seemed satisfied with that, and that was the whole extent of it. * * * Q. No; at any time? A. Yes, sir; I had such a conversation with Mr. Edwards. Q. What, if anything, was said, anything about this stock, in any of the conversations with Mr. Edwards? A. He seemed to think that we ought to give him the seed on account of the Western Investment Company having stock in the gin. * * * Q. I will ask you to state who got the use and benefit of the goods that were sold, the material for the building, and all other items that make up this account sued on in this action? A. The Coweta Cotton & Milling Company. * * * Q. State, Mr. Knight, how you were treated by the Western Investment Company in their business relations with you in the sale of these goods to you, as well as other business transactions had with them? A. We were treated as a corporation. * * Q. Mr. Knight, I will ask you whether or not you, as the general manager of the Coweta Cotton & Milling Company, acted in good faith in the belief that you were a corporation? A. Yes, sir. Q. Did you or your co-incorporators delay your incorporation with the purpose of deceiving or defrauding any one? A. No, sir. * * * Q. Mr. Knight,

you may examine Plaintiff's Exhibits D, E, and F, which hand you, and state what those exhibits are? A. They are checks of $1,500 each in payment of cotton to the Western Investment Company. They had paid for cotton on our order just paying that back through the bank."

Introduced in evidence and read by Mr. Murphey as follows: Defendant's Exhibit D: "Wagoner, I. T., Dec. 5, 1902. $1500.00. The First National Bank of Wagoner, Indian Territory, pay to Western Investment Co. or bearer, fifteen hundred and no dollars. No. 101. Coweta Cotton & Milling Co., J. G. Knight, Secy." Defendant's Exhibit E: "Wagoner, I. T., Dec. 1st, 1902. $1500.00. The First National Bank of Wagoner, Indian Territory. Pay to Western Investment Co. or bearer, fifteen hundred & no-100 dollars. No. ———. Coweta Cotton & Milling Co., J. G. Knight, Secy." Defendant's Exhibit F: "Wagoner, Ind. Ter., Jan. 15th, 1903. First National Bank of Wagoner, pay to Western Inv. Co. Bearer, $1500.00. Fifteen hundred & no dollars. Coweta Cotton & Milling Co., J. G. Knight, Secy."

It appears from the testimony of Mr. Davis that he was vice president and general manager of the plaintiff, and that he had entire charge of the business of the plaintiff; that he was instrumental in the organization of the defendant Coweta Cotton & Milling Company as a corporation. Plaintiff in error objected to the testimony of Mr. Davis upon the ground that no authority was given by the board of directors of the plaintiff, authorizing Mr. Davis to do the things that he testified that he did do for the plaintiff, and that, therefore, the plaintiff was not bound by his action as general manager. Mr. Davis states that there was no formal action of the board, but by conversations with the directors among themselves he did what was desired by the plaintiff, and that his authority in acting for the plaintiff in subscribing for stock in the defendant corporation for the plaintiff was given him by consultation

among the directors of the plaintiff, the same as he transacted all other business. The objection of the plaintiff in error was overruled, and the defendant in error cites the following authorities to sustain the court's ruling: "Authority to an agent given by the board of directors may be proved by oral evidence; there being no record of the same in their corporate books. Morrill vs Segar Mfg. Co., 32 Hun. 543. When there are but a few persons interested in a corporation, ordinary business may be transacted without the formality of resolutions. It may be done by conversation without formal votes. Hall vs Herter, 83 Hun, 19, 31 N. Y. Supp. 692. Where other circumstances prove the directors' consent, it is not necessary to bind the corporation that their records should disclose the formal vote of the directors. Nashua Co. vs Boston & L. R. Co. (C. C.) 27 Fed. 821; Taymouth vs Koehler, 35 Mich. 22." It is contended by the plaintiff in error that the decision in Garnett et al vs Richardson et al., 35 Ark. 144, is binding upon this court. In Appolos vs Brady, 49 Fed. 401, 1 C. C. A. 299, it is held that the Arkansas decisions construing the Arkansas statutes adopted and put in force in this jurisdiction by the Supreme Court of the state of Arkansas prior to their adoption here are binding upon this court. This court will follow the construction given by the Supreme Court of Arkansas to its statutes, and, so far as it is held in the case of Garnett vs Richardson "that the appellants could not do business as a corporation until their articles of association were filed in the office of the Secretary of State (clerk of the Court of Appeals) as provided by the general act of incorporation," it is binding upon this court as a construction of the Arkansas statute in regard to the organization of corporations. But, when it is decided in that case that for purchases made by the promoters or directors before then they were personally liable as partners, that is not a construction of the statute in regard to the organization of corporations, and is not binding upon

this court.   Therefore it is our judgment that it is our duty
to follow what we believe to be the weight of authority, even
though it be opposed to the decision of the Supreme Court
of Arkansas in that respect.   In this case there is no fraud
alleged against these defendants, and no statute has been
presented making stockholders individually liable to a creditor
who has dealt with a de facto corporation as a corporation,
and the defendants in error have introduced in evidence proof
that the defendants were acting in good faith in their trans-
actions for the Coweta Cotton & Milling Company.

There is undoubtedly some conflict of authority between
the decisions of the different states on the subject of the in-
dividual liability of the directors in acting for a proposed cor-
poration which has not been fully organized under the law.
In Snider's Sons' Company vs Troy, 91 Ala. 224, 8 South.
658, 11 L. R. A. 515, 24 Am. St. Rep. 887, the court discusses
this conflict of authority, and says: "Whether the share-
holders in a corporation de facto are individually liable for
the corporate debts, in the absence of fraud or a statute, is
a question as to which the authorities are in direct antagonism.
In Cook on Stocks & Stockholders, § 233, the doctrine asserted
is:   'A corporate creditor seeking to enforce the payment of
his debt may ignore the existence of the corporation, and may
proceed against the supposed stockholders as partners,' by
proving that the prescribed method of becoming incorporated
was not complied with by the company in question.'   The
leading cases supporting this doctrine are Bigelow vs Gregory,
73 Ill. 197; Abbott vs Omaha Smelt. Co., 4 Neb. 416; Garnett
vs Richardson, 35 Ark. 144; Ferris vs Thaw, 72 Mo. 446; Ridenour
vs Mayo, 40 Ohio St. 9; Coleman vs Coleman, 78 Ind. 344.
*       *       *       In 2 Morawetz on Private Corporations,
§ 748, the doctrine is stated as follows:   'If an association
assumes to enter into a contract in a corporate capacity, and
the party dealing with the association contracts with it as

if it were a corporation, the individual members cannot be charged as parties to the contract, either severally or jointly, or as partners. The following cases maintain the doctrine that the members of a corporation de facto cannot be held liable as partners for the corporate debts: Fay vs Noble, 7 Cush. (Mass.) 188; First Nat. Bank vs Almy, 117 Mass. 476; Stout vs Zulick, 48 N. J. Law, 599, 7 Atl. 362; Planters', etc., Bank vs Padgett, 69 Ga. 164; Merchants', etc., Bank vs Stone, 38 Mich. 779; Humphreys vs Mooney, 5 Colo. 282; Central City Sav. Bank vs Walker, 63 N. Y. 424; Gartside Coal Co. vs Maxwell (C. C.) 22 Fed. 197; Whitney vs Wyman, 101 U. S. 392, 25 L. Ed. 1050.     *     *     *     The question before us, and the only question we propose to decide, is whether, there being no fraud alleged, nor statute making the stockholders individually liable, a creditor who has dealt with a de facto corporation as a corporation, who has entered into contractual relations with it in its corporate name and capacity, can disregard the existence of the corporation, and, electing to treat it as a partnership, enforce the collection of his debt from the stockholders individually.     *     *     *     The general rule is thus stated by Brickell, C. J.:     'Whoever contracts with a corporation in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the existence of the corporation, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or of rights arising under it, is sought.'     Cahall vs Citizens' M. B. Ass'n, 61 Ala. 232; Central Agricultural, etc., Ass'n vs Alabama Gold Life Ins. Co., 70 Ala. 120; Schloss vs Montgomery Trade Co., 87 Ala. 411, 6 South. 360, 13 Am. St. Rep. 51.     *     *     *     A corporation de facto has an independent status, recognized by the law as distinct from that of its members. A partnership is not the necessary legal consequence of an abortive attempt at incorporation. As said in Fay vs Noble, 7 Cush.

(Mass.) 188: 'Surely it cannot be, in the absence of all fraudulent intent, that such a legal result follows as to fasten on parties involuntarily, for such a cause, the enlarged liability of co-partners—a liability neither contemplated nor assented to by them. The statement of the proposition carries with it a sufficient refutation.' * * * The doctrine that a creditor who has dealt with a de facto corporation in its corporate capacity cannot charge the stockholders as partners with the corporate debt, there being no fraudulent intent alleged and proved, seems to us to be sustained by the weight of authority, maintained by stronger reasoning, consistent with well-settled principles and in harmony with the policy of the state."

In Gartside Coal Co. vs Maxwell (C. C.) 22 Fed. 197, decided in the Circuit Court for the Eastern District of Missouri, Brewer, J., says: "It is very clear to my mind that this attempted incorporation was invalid, and that, if it had ever been challenged by the officer of the state, in proper proceedings, its exercise of corporate powers would have been enjoined; but, while I think that is unquestionably so, it does not seem to me to follow that those who were supposing themselves stockholders in this corporation can be held personally liable. I think the true rule is this: That where persons knowingly and fraudulently assume a corporate existence, or pretend to have a corporate existence, they can be held liable as individuals; but where they are acting in good faith, and suppose that they are legally incorporated—that they are stockholders in a valid corporation—and where the corporation assumes to transact business for a series of years, and the assumed corporate existence is not challenged by the state, then they cannot be held liable, as individuals, as members of the corporation. Of course, the converse is perfectly true, that a person who deals with a corporation, or gives to an assumed

corporation a note, cannot question the corporate existence of that party with whom he has dealt or to whom he gave his note. So, on the other hand, where a person deals with what he supposes is a corporation, with what all parties think is a corporation, where he gives his credit to that supposed corporation, he cannot afterwards, when it turns out that it is not validly incorporated, turn round and say: 'Well, I dealt with this supposed corporation. I thought it was a corporation. I trusted it as a corporation. I sold goods to it as a corporation; but it seems when it first attempted to become incorporated that there was some defect or irregularity in its proceedings, so that it did not become legally incorporated, and therefore you who are stockholders will be held personally liable.' I do not think that can be done, and judgment will be entered for the defendant."

In Johnson et al vs Okerstrom et al., 73 N. W. 147, 70 Minn. 303, from the Supreme Court of Minnesota, the court says: "A de facto corporation exists where there is a law authorizing the creation of a corporation, an attempt to organize a corporation, pursuant to it, and user as a corporation under such attempted organization. Color of apparent organization does not mean that there shall have been a full compliance with what the law requires to be done, nor a substantial compliance. A substantial compliance will make a corporation de jure. But there must be an apparent attempt to perfect an organization under the law. There being such apparent attempt to perfect an organization, the failure as to some substantial requirement will prevent the corporation from being a corporation de jure; but, if there be user pursuant to such attempted organization, it will not prevent it being a corporation de facto.      *      *      *      In this case the evidence shows that there was a bona fide attempt to incorporate, and a colorable compliance with the law, followed by a user as a corporation of the rights which the parties be-

lieved and claimed were conferred upon them by their attempted organization. The evidence was therefore sufficient to justify the instructions of the trial court, and to sustain a finding that the notes were executed by a de facto corporation."

In Tennessee Automatic Lighting Co. vs Massey et al., 56 S. W. 35, in the Court of Chancery Appeals of Tennessee, the court says: "It follows from this that the Nashville Hotel Company by its conduct gave sufficient proof of user of the franchises claimed by it, and that it occupied at least the status of a corporation de facto, and the complainant, having dealt with such supposed corporation as a corporation, cannot now abandon this position, and sue the individual members, to hold them liable merely as partners. Merriman vs Magiveny, 12 Heisk. 494; Railroad Co. vs Johnson, 8 Baxt. 332, 335; Manufacturing Co. vs Vertrees, 4 Lea, 75; 1 Thomp. Corp. §§ 518-538 (and see section 521); Sherwood vs Alvis, 83 Ala. 115, 3 South. 307, 3 Am. St. Rep. 695."

In Finnegan vs Knights of Labor Bldg. Ass'n et al., 53 N. W. 1150, 52 Minn. 239, 18 L. R. A. 778, 38 Am. St. Rep. 552, in the Supreme Court of Minnesota, the court say: "The plaintiff furnished plumbing for the building during its construction amounting to $599.50, for which he brings this action against several subscribers to the stock, as copartners doing business under the firm name of the 'K. of L. Building Association.' The theory upon which the action is brought is that, the association having failed to become a corporation, it is in law a partnership, and the members liable as partners for the debts incurred by it." And on page 1151 of 53 N. W., page 243 of 52 Minn., the court says: " 'When a body of men are acting as a corporation, under color of apparent organization, in pursuance of some charter or enabling act, their authority to act as a corporation cannot be questioned collaterally.' "

In Doty et al. vs Patterson et al., 56 N. E. 668, 155 Ind. 60, from the Supreme Court of Indiana, the court says: "The complaint, which is in one paragraph, proceeds upon the theory that the stockholders in a de facto corporation are liable to the creditors thereof as partners; and the special finding is made, and conclusions of law are stated thereon in favor of appellees, upon the same theory.    *    *    * It is settled in this state that, when there is a statute authorizing the creation of a corporation, an attempt to comply with the statute, and an actual exercise of corporate functions, although some formalities required by law have been omitted, there is at least a corporation de facto, the legal existence of which can only be questioned in a direct proceeding brought by the proper party for that purpose.   Crowder vs Town of Sullivan, 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647; Williams vs Railway Co., 130 Ind. 70, 74, 75, 29 N. E. 408, 15 L. R. A. 64, 30 Am. St. Rep. 201; Hasselman vs Mortgage Co., 97 Ind. 365, 368, 369; Williamson vs Association, 89 Ind. 389, and cases cited; Baker vs Neff, 73 Ind. 68. See, also, 1 Cook, Corp. (4th Ed.) § 637; 1 Thomp. Corp. §§ 501, 505, 507; 2 Thomp. Corp. §§ 1851-1855, 1861; Clark, Corp. pp. 90-108; 8 Am. & Eng. Enc. Law (2d Ed.) 754-756."

In Merchants' & Manufacturers' Bank vs Stone et al., 38 Mich. 779, it is said: "In short, the company was prima facie a lawful corporation which the note was taken, and the bank admitted in the very transaction that it was one in fact, and that admission cannot be disputed in this collateral way in order that the bank may call in question the corporate existence of the company and charge against the individual members the precise obligation which was unequivocally accepted as a. corporate one."  In Gow vs Collins & Parker Lumber Co., 109 Mich. 45, 66 N. W. 676, the court says: "The complainants seek to have the corporation known as the Collin & Parker Lumber Company declared invalid and void, and

its stockholders held to be partners, and liable for the indebtedness due the complainants.    Are the complainants in a position to make that claim and to seek that relief?        *        *        * By seeking to sustain this suit as a proceeding to foreclose mortgages executed by the corporation known as the Collin & Parker Lumber Company, the complainants affirm the corporate existence of that company as a legal body, and the legality of the mortgages mentioned in the bill of complaint."

In Eaton vs Aspinwall, 19 N. Y. 119, the court says: "Thus it will be seen that this corporation, though not a valid corporation in point of law, may carry on its enterprises, have its day in court, and divide its revenue among the holders of the shares of its capital, until the state shall interpose and ask that it be dissolved."

In Little Rock & Ft. Smith R. R. Co. vs Perry, 37 Ark. 164, the court says:   "That where the formation of a corporation was in contemplation and the promoters of the corporation were taking initiatory steps to perfect its organization, and obtain a charter, and provide in advance the means necessary for its successful operation, all contracts made by such promoters, for the benefit of the future corporation, and which were reasonable and proper to put it in operation, and the benefits of which were afterwards accepted by the corporation, became binding on the corporation without any formal contract to pay."

In Whitney vs Wyman, 101 U. S. 392, 25 L. Ed. 1050, the syllabus of the case is as follows:   "Where a party who discloses his principal and is known to be acting as an agent enters as such into a contract, he is not liable thereon in the absence of his express agreement to be thereby bound.   Where a corporation, organized pursuant to the provisions of a statute, but before its articles of association were filed with the county clerk, entered into a contract for certain machinery to enable

it to carry on its business, held, that its subsequent recognition of the validity of the contract was binding upon it, although the statute declares that a corporation so organized shall not commence business before such articles are so filed." And in the opinion in that case the court said: "Where the question of agency in making a contract arises, there is a broad line of distinction between instruments under seal and stipulations in writing not under seal or by parol. In the former case, the contract must be in the name of the principal, must be under seal, and must purport to be his deed and not the deed of the agent covenanting for him. Stanton vs Camp, 4 Barb. (N. Y.) 274. In the latter cases the question is always one of intent; and the court, being untrammeled by any other consideration, is bound to give it effect. As the meaning of the lawmaker is the law, so the meaning of the contracting parties is the agreement.      *      *      *      The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so.      *      *      * It seems to us entirely clear that both parties understood and meant that the contract was to be, and in fact was, with the corporation, and not with the defendants individually.  *  *  * The corporation having assumed by entering into the contract with the plaintiff to have the requisite power  both parties are estopped to deny it."

In W. L. Wells Company vs Gastonia Cotton Manufacturing Company, 198 U. S. 177, 25 Sup. Ct. 640, 49 L. Ed. 1003, the court says: "The contention of the defendants in the court below was—and their contention here is—that the subscription of $10,000 to the capital stock of the W. L. Wells Company and the payment thereof, was a condition precedent to the company's becoming a corporation.      *      *      * We are of opinion that the Circuit Court of Appeals erred in

holding that the charter of the W. L. Wells Company made it a condition of its becoming a corporation that $10,000 of capital stock should be subscribed and paid for. The question was not as to the good faith of the incorporators, nor whether the company was organized in fraud of the law. These were not matters to be inquired into in ordinary suits between the company and individuals or incorporations. If the organization of the company as a corporation was tainted with fraud, it was for the state, by some appropriate proceeding, to annul its charter.    *    *    *    It did not require the payment of a given amount of stock subscriptions before the company should be considered in esse as a corporation. It did nothing more than confer the privilege or power of commencing business when a specified amount, less than the whole, of its authorized capital stock was subscribed and paid for. *    *    *    If the commencing of the business for which it was incorporated before a certain amount of capital stock was subscribed and paid for was in violation of the company's charter, that was a matter for which it could be called to account by the state, and did not affect the existence in law of the company as a corporation. Of course, if the charter of the company had made it a condition precedent to its becoming a corporation that a certain amount of capital stock should be subscribed and paid for, a compliance with that condition would have been necessary before the company would have become a corporation entitled to sue and be sued in the courts of the United States. But, as we have seen, the charter in question prescribed no such condition. If the Legislature had intended to withhold corporate existence until a given amount of capital stock was subscribed and paid for, that intention, we may assume, would have been manifested by clear language."

Under the decision in Garnett vs Richardson, supra, we are of the opinion that the corporation was not fully or-

ganized until the articles were filed with the clerk of the Court of Appeals on the 22d day of December, 1902, that then it became a corporation de facto, but it does not appear that there was any defense of a corporation de facto existing prior to that time in that case, or that by the course of dealings between the plaintiff and the defendant as a corporation, as in the case at bar, an estoppel arose against the plaintiff from holding that the defendant the Coweta Cotton & Milling Company was not a corporation. And these defendants making the purchases they did, before the final organization of the corporation, and acting in good faith, without any fraud, are not liable individually to the plaintiff, but the corporation itself is liable, as is held in Whitney vs Wyman, supra; and the ratification of the purchases may be, as is shown in First National Bank vs Frick, 75 Mo. 184, 42 Am. Rep. 400, as follows: "And such ratification need not be manifested by any vote or formal resolution of the corporation or be authenticated by the corporate seal. Thus, where the president of a railroad company established certain rates of fare and freight on a railroad, the corporation receiving and appropriating such rates was held to have ratified the president's acts and as tantamount to an original authority. And the law of agency is as well settled in respect to corporations as to individuals that if with knowledge of the unauthorized act of the agent the corporation neglect to promptly disavow such act, it will be as binding on the corporation as if prior authority had been conferred. And certainly no higher degree of evidence is requisite in establishing ratification on the part of a corporation than is requisite in showing an antecedent authorization. And in regard to the latter the doctrine is that in order to bind the corporation no formal vote or resolution of the corporation need be shown." In W. L. Wells vs Gastonia Cotton Mfg. Co., cited by the Supreme Court of the United States, supra, the court said: "As soon as $10,000 of said

stock is subscribed and paid for, said corporation shall have power to commence business."

The laws of Arkansas put in force in this jurisdiction in reference to the organization of corporations provides that, before any corporation formed or established by virtue of the provisions of this act shall commence business, the president and directors thereof shall file a true copy of their articles of association with the clerk of the Court of Appeals, and a duplicate thereof with the clerk of the county in which said corporation is to transact said business. The statutory requirement in the two cases is similar, and the Supreme Court, in passing upon this very question, says, if the commencing of the business for which it was incorporated before a certain amount of capital stock was subscribed and paid for was in violation of the company's charter, that was a matter for which it could be called to account by the state, and did not affect the existence in law of the company as a corporation.

In our judgment, the decisions of the Supreme Court of the United States in the above cited cases are conclusive upon the question involved in this case, and are binding upon this court. Therefore the action of the court below in directing a verdict for the defendant was right, and should be, and is hereby, affirmed.

GILL, C. J., and CLAYTON and LAWRENCE, JJ., concur.