JOHN JOHNSON *vs.* ELWOOD S. CORSER and others.[1]

December 12, 1885.

Corporations—Failure to Perfect Incorporation—Liability of Incorporators.—Several persons who have entered into articles of association, with the intention of becóming incorporated, but who have failed to perfect an incorporation, are individually liable upon a contract which they may be found to have authorized to be made, or which they may have ratified, although such contract may have been in terms the contract of the association or assumed corporation.

Same—Evidence.—Evidence considered sufficient to charge the defendants with such liability.

Same—Incorporators held not Liable as Partners.—The purposes of such an association being to secure the extension and grading of a public street, not for gain or profit, *held*, that the prosecution of the contemplated work by the unincorporated association did not constitute the association a partnership proper, nor the associates copartners, with authority (implied from their relations) in each member to bind all of the associates by any act within the scope of the business undertaken.

[1] JAMES UPTON *vs.* ELWOOD S. CORSER and others.

December 12. 1885.

Appeal by defendants from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial.

*Rea, Kitchel & Shaw* and *Scott, Longbrake & Van Cleve*, for appellants.

*Thomas Canty* and *Robert Christensen*, for respondent.

DICKINSON, J. The questions involved in this case are the same as those considered in *Johnson* v. *Corser, supra,* and the result is controlled by that decision.

Order affirmed.

On April 30, 1884, the defendants signed articles associating themselves together for the purpose of organizing as a body corporate under the name of "The Sixth Avenue North Extension and Improvement Association." These articles of association were not filed for record until November 21, 1884. In the first week in May, 1884, by-laws were adopted and officers were elected. On June 16, 1884, a contract in writing, in the name of the association, was made with Egan & Salter for grading and improving Sixth Avenue. Work was begun under this contract, and continued till August 5, 1884, when the plaintiff and others, laborers engaged upon the work, struck and refused to continue work, because they had not received their pay. Two of the defendants, the secretary and vice-president of the association, visited the scene of work and succeeded in inducing plaintiff and his fellow-laborers to return to work, upon the promise, as claimed by plaintiff but denied by defendants, that the association would pay them. Thereafter the plaintiff continued work till November 18, 1884, and the officers of the association paid them to October 1, 1884.

The plaintiff brought this action before a justice of the peace for Hennepin county against the defendants, as partners, to recover for his work and services from October 1, 1884, to November 18, 1884. Upon appeal to the district court, the action was tried before *Young*, J., and a jury, and plaintiff had a verdict. Defendants appeal from an order refusing a new trial.

*Rea, Kitchel & Shaw*, and *Scott, Longbrake & Van Cleve*, for appellants.

*Thomas Canty* and *Robert Christensen*, for respondent.

DICKINSON, J.[1] In the spring of 1884 the defendants entered into articles of association, intending to acquire a corporate character, and probably supposed that this purpose had been accomplished. No incorporation was, however, effected. The articles of association executed by the defendants declared the purpose of the proposed corporation to be to secure the extension of a certain street in Minneapolis, and to improve and beautify the same. They provided for no

---

[1] Mitchell, J., did not hear the argument and took no part in this case.

capital stock, but that the funds necessary for the accomplishment of the contemplated purpose should be raised by subscription from the members. The usual officers were named, and a board of five directors provided for; meetings of the members were held; officers and a board of directors elected; by-laws adopted, which provided for the appointment of an executive committee, whose duty was declared to be to direct and superintend the work and to employ the necessary labor; subscriptions were made by all of the defendants, excepting Stark, for the purposes of the association; a contract was made between the association, by its adopted name, and certain contractors, (Egan & Salter,) for grading and improving the street, and the performance of the work under the contract was entered upon. The plaintiff was an employe of Egan & Salter, and engaged, with others, in the work. During the progress of the work, the employes of the contractors, becoming dissatisfied with their employers, ceased to work. Then two of the defendants, Mathews and Riebeth, who were respectively vice-president and secretary of the association, made an agreement with the laborers, the precise nature of which is in dispute. The evidence on the part of the plaintiff is sufficient to support what must have been the conclusion of the jury, that the agreement was that if the men would go on with the work, the association would pay them; while the evidence for the defendants tended to show that the agreement was merely to pay directly to the laborers the money which should be due to Egan and Salter on their contract. By this action the plaintiff seeks to recover against the defendants individually upon this agreement.

The attempt to become incorporated was ineffectual to limit the individual liability of the associates; and upon any contract which they may be found to have authorized to be made, or which they may have ratified, although in terms the contract was made as the contract of the association or assumed corporation, the members may be held to an individual responsibility. *Hess* v. *Werts*, 4 Serg. & R. 356; *Pettis* v. *Atkins*, 60 Ill. 454; *Bigelow* v. *Gregory*, 73 Ill. 197; *Garnett* v. *Richardson*, 35 Ark. 144; *Kaiser* v. *Lawrence Sav. Bank*, 56 Iowa, 104; *Abbott* v. *Omaha Smelting Co.*, 4 Neb. 416; *Field* v. *Cooks*, 16 La. Ann. 153; *Jessup* v. *Carnegie*, 44 N. Y. Super. Ct. 260.

While, if the other contracting party were to charge the defendants in their assumed corporate capacity, they might not in some cases be heard to deny their corporate existence, yet, there being in fact no such existence, the plaintiff may go behind the assumed corporate character, and hold the real principals to responsibility for the acts of those whom they may have clothed with authority to act in behalf of the association. *Bigelow* v. *Gregory, supra; Kaiser* v. *Lawrence Sav. Bank, supra; Jessup* v. *Carnegie, supra; Hurt* v. *Salisbury,* 55 Mo. 310.

We deem the evidence to have been sufficient to sustain a conclusion on the part of the jury that all of the defendants, the members of the association, authorized the prosecution of the contemplated work, and knew that it was actually being carried forward under the direction of the appointed agents of the association; that the executive committee was authorized by the association to prosecute the work as its agent, and for that purpose to employ laborers; that the alleged contract upon which this action is brought was made by two members of the committee in behalf of the association; and that the whole committee, having knowledge of that fact, ratified the agreement, making payments from time to time in accordance with it. Only as to two of these particulars does the sufficiency of the evidence seem questionable, and only to that evidence shall we particularly refer.

It is in evidence that the defendant Stark did not subscribe or pay anything for the purpose of the association, and, after executing the articles of association, took no active part in the enterprise. He, however, subscribed to the articles of association, the declared purpose of which was the prosecution of this work. He was present on the occasion when the agreement sued on was made, and, as the evidence tends to show, heard the agreement then made,—that the association would pay the laborers,—although, according to his own testimony, the agreement was not such as is shown on the part of the plaintiff. We think this sufficient to warrant the conclusion that Stark was aware that the work was being carried on in behalf of the association with which he had united, and that Mathews and Riebeth in his presence assumed to make this contract as the contract of the

association.   If the fact were so, the mere silence of Stark might be deemed to signify his acquiescence.

It is not entirely clear from the evidence whether the agreement made by Mathews and Riebeth was communicated to all the other members of the executive committee.   The by-laws adopted by the association declared that there should be an executive committee of five, of which the president, vice-president, and secretary should be *ex officio* members, and of which three members should constitute a quorum.   But it is testified to that *five* members of the executive committee were elected.   We are left in doubt whether the association in fact named three or five of its members, in addition to the *ex officio* members, as its executive committee.   But this is not very material.   It is distinctly testified to that the agreement made by two of the *ex officio* members of the committee was communicated to three of the other members of the committee, one of whom was the president, and that they assented to it.   It further appears that other members named as members of that committee were present when computations were made of the amounts to be paid to the laborers; that meetings of the committee were held, at which they took action relative to the work being carried forward under the agreement made by Mathews and Riebeth; and that during a period of several weeks the laborers were paid by direction of the committee.   While this evidence is not the most satisfactory, it is still such as to justify the conclusion that the agreement, as testified to on the part of the plaintiffs, was communicated to the executive committee as a whole, and was ratified and adopted by them.   Nothing further was necessary to charge the defendants with liability.

The plaintiff asserts, as a rule of law applicable to the case, that, from the mere failure to perfect the contemplated incorporation, the association, after proceeding to carry on the proposed enterprise, became a partnership, and the members copartners, with authority (implied from their relations) in each member to bind all of the associates by any act within the scope of the business carried on by the association.   We cannot sanction the application to this case of the doctrine of implied agency as it is recognized in ordinary business copartnerships.   If it be conceded that the principle upon which

the plaintiff relies exists and is applicable in cases where the business contemplated and carried on by the association, and the purposes for which it is prosecuted, are such as involve the essential elements of a partnership undertaking, or where the articles of association contain all that is essential to create a partnership,—still the principle is not applicable to this case, in which those conditions do not exist. So far as appears, the business undertaken and carried on by the defendants was not of a partnership character, nor the purposes such as to suggest the relation of copartners between those engaged in it. It was only the grading of a public street by the co-operation of these several persons, and that, so far as appears, for no purpose of gain or profit. This would not have constituted those uniting and contributing for such a purpose copartners; nor can such a result have been accomplished by the further fact that an incorporation was contemplated, and attempted to be perfected, but failed. We deem the liability of the defendants to rest upon the ordinary principles of contract and agency, and not upon the ground of an existing copartnership.

The articles of association executed by the defendants were properly received in evidence. This evidence went to show the co-operation of the defendants in the enterprise in carrying on which the contract sued on was made. The same is true of the proof of contributions of money from the defendants.

Order affirmed.