ANDREW J. FINNEGAN *vs.* FREDERICK D. NOERENBERG *et al.*.

Argued Jan. 3, 1893.    Decided Jan. 13, 1893.

### De Facto Corporations Defined.

A *de facto* corporation exists where there is a law authorizing the creation of corporations, an attempt to organize a corporation pursuant to it, and user as a corporation under such attempted organization.

### Same—Substantial Compliance with the Law not Necessary.

A substantial compliance with the law is not necessary to constitute the body a *de facto* corporation.

### Title of Laws 1870, ch. 29, Sufficient.

Laws 1870, ch. 29, entitled "An act in relation to the formation of co-operative associations," is not obnoxious to the objection that the title does not express its subject, as required by the constitution.

### For what Purposes Corporations may be Formed under Laws 1870, ch. 29.

Under that act, a corporation may be formed for the purpose of buying, owning, improving, selling, and leasing of lands, tenements, and hereditaments, real, personal, and mixed estates and property, including the constructing and leasing of a building, etc.

### What Acts are a User Sufficient to Constitute a Corporation de Facto.

The taking subscriptions to and issuing stock, electing managers and directors, adopting by-laws, buying a lot, and constructing and leasing a building upon it, is a sufficient user to constitute a corporation attempted to be organized under that law a *de facto* one.

Appeal by plaintiff, Andrew J. Finnegan, from a judgment of the District Court of Hennepin County, *Smith*, J., entered May 24, 1892, that he take nothing by his action.

Plaintiff commenced this action against defendants, Frederick D. Noerenberg, Charles S. Axtell, George Huhn, Joseph P. Allaire and many others, alleging in his complaint, that they were copartners doing business under the name of "The K. of L. Building Association." That in December, 1888, at Minneapolis, he at their request furnished materials and did plumbing to the value of $599.50 for them upon a building they were erecting. That he had not been

paid, and he demanded judgment for the amount with interest. Noerenberg answered denying these allegations, and alleging that the materials were furnished and the work done for a corporation *de facto* known as The Knights of Labor Building Association and not for the defendants as partners. Plaintiff replied denying the existence of such corporation.

The issues were brought to trial January 27, 1892, before the court without a jury. It was shown in evidence that on June 15, 1886, a number of men adopted and signed articles of incorporation pursuant to Laws 1870, ch. 29. The name adopted was "The K. of L. Building Association." The general nature of its business was buying, owning, improving, selling and leasing of lands, real and personal estates and property, and the construction of a building in Minneapolis as a hall for the Knights of Labor. Its capital stock was fixed at $100,000, divided into shares of $5 each to be paid in as the board of directors should direct. Its officers were to be seven directors, a president, a secretary and treasurer. They obtained subscriptions to the stock and adopted by-laws which were filed and recorded in the city clerk's office. They purchased lots four (4) and five (5) in block seventy (70) of the original town of Minneapolis and erected thereon a brick building, known as "The Labor Temple," three stories high, with a large hall on the third floor. Plaintiff furnished materials and did plumbing thereon to the value of $599.50 at the request of the board of managers. The defendant Noerenberg subscribed and paid for ten shares of the stock. The other defendants were also stockholders. The association became insolvent and owed over $40,000 which it was unable to pay. The attempt to incorporate was made in good faith, and the defendants believed they were duly incorporated, and that they were only liable as stockholders, not as partners, for the debts contracted. When the plaintiff furnished materials and did the plumbing, he believed he was dealing with the corporation and not with a copartnership.

The plaintiff claimed that the attempt to incorporate was ineffectual because Laws 1870, ch. 29, under which the attempt was made, is entitled "An act in relation to the formation of co-operative associations," and does not express its subject as required by the Consti-

tution, Art. IV., § 27; and because the association is not within the scope of the statute, and does not conform to its requirements. He claimed that the stockholders were partners and individually liable for his demand. The trial court thought otherwise and gave judgment for the defendants.

*Savage & Purdy*, for appellant.

The law under which incorporation was attempted, is void under that provision of the Constitution which relates to the titles of bills. Art. IV., § 27. *Johnson* v. *Harrison*, 47 Minn. 575; *Mewherter* v. *Price*, 11 Ind. 199; *People* v. *Allen*, 42 N. Y. 404; *State* v. *Kinsella*, 14 Minn. 524, (Gil. 395;) *People* v. *Mahaney*, 13 Mich. 481.

The association as organized is not within the scope of the statute, which only authorizes incorporation for the purposes of trade, or for carrying on any lawful mechanical, manufacturing or agricultural business.

The articles do not conform to the requirements of the statute. The place within which its business is to be carried on, is not distinctly set forth in its articles.

The association was not a *de facto* corporation. Two things are essential to a *de facto* corporation : (1) organization under color of law, and (2) user. *De Witt* v. *Hastings*, 40 N. Y. Super. Ct. 463; *Eaton* v. *Walker*, 76 Mich. 579; *Williamson* v. *Kokomo, etc., Fund Ass'n*, 89 Ind. 389; *Abbott* v. *Omaha Smelting, etc., Co.*, 4 Neb. 416; *Heaston* v. *Cincinnati, etc., R. Co.*, 16 Ind. 275; *Vredenburg* v. *Behan*, 33 La. An. 627; *Raccoon River Nav. Co.* v. *Eagle*, 29 Ohio St. 238; *West* v. *Bullshin, etc., Ditching Co.*, 32 Ind. 138; *O'Reiley* v. *Kankakee, etc., Draining Co.*, 32 Ind. 169; *Booth* v. *Wonderly*, 7 Vroom, 250; *Harris* v. *McGregor*, 29 Cal. 125; *Clegg, Wood & Co.* v. *Hamilton, etc., Grange Co.*, 61 Iowa, 121; *State* v. *Critchett*, 37 Minn. 13.

It is requisite to the establishment of the *de facto* existence of a corporation, to show actual user. In this case there are no facts showing user. The business transacted by this association has been confined to a single enterprise, viz. that of erecting and leasing a particular hall or "Labor Temple" as it is called. The statute

does not authorize any such business, for it is neither trade nor mechanical, manufacturing, nor agricultural business. *De Witt* v. *Hastings*, 40 N. Y. Super. Ct. 463; affirmed 69 N. Y. 518; *People* v. *Troy House Co.*, 44 Barb. 625; *Swartwout* v. *Michigan Air Line R. Co.*, 24 Mich. 389.

*Ankeny & Irwin*, for respondents.

This is a *de facto* corporation, for there is both a colorable compliance with law, and a user. 4th Amer. & Eng. Encyc. of Law, 198; *Gartside Coal Co.* v. *Maxwell*, 22 Fed. Rep. 197; *Whitney* v. *Wyman*, 101 U. S. 392.

GILFILLAN, C. J.     Eight persons signed, acknowledged, and caused to be filed and recorded in the office of the city clerk in Minneapolis, articles assuming and purporting to form, under Laws 1870, ch. 29, a corporation, for the purpose, as specified in them, of "buying, owning, improving, selling, and leasing of lands, tenements, and hereditaments, real, personal, and mixed estates and property, including the construction and leasing of a building in the city of Minneapolis, Minn., as a hall to aid and carry out the general purposes of the organization known as the 'Knights of Labor.'"     The association received subscriptions to its capital stock, elected directors and a board of managers, adopted by-laws, bought a lot, erected a building on it, and, when completed, rented different parts of it to different parties. The plaintiff furnished plumbing for the building during its construction, amounting to $599.50, for which he brings this action against several subscribers to the stock, as copartners doing business under the firm name of the "K. of L. Building Association."     The theory upon which the action is brought is that, the association having failed to become a corporation, it is in law a partnership, and the members liable as partners for the debts incurred by it.

.It is claimed that the association was not an incorporation because —*First*, the act under which it attempted to become incorporated, to wit, Laws 1870, ch. 29, is void, because its subject is not properly expressed in the title; *second*, the act does not authorize the formation of corporations for the purpose or to transact the business

stated in the articles; *third,* the place where the business was to be carried on was not distinctly stated in the articles, and they had, perhaps, some other minor defects. .

It is unnecessary to consider whether this was a *de jure* corporation, so that it could defend against a *quo warranto,* or an action in the nature of *quo warranto,* in behalf of the state; for, although an association may not be able to justify itself when called on by the state to show by what authority it assumes to be, and act as, a corporation, it may be so far a corporation that, for reasons of public policy, no one but the state will be permitted to call in question the lawfulness of its organization. Such is what is termed a corporation *de facto,*—that is, a corporation from the fact of its acting as such, though not in law or of right a corporation. What is essential to constitute a body of men a *de facto* corporation is stated by Selden, J., in *Methodist, etc., Church* v. *Pickett,* 19 N. Y. 482, as "(1) the existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; and (2) a user by the party to the suit of the rights claimed to be conferred by such charter or law." This statement was apparently adopted by this court in *East Norway Church* v. *Froislie,* 37 Minn. 447, (35 N. W. Rep. 260;) but, as it leaves out of account any attempt to organize under the charter or law, we think the statement of what is essential defective. The definition in Taylor on Private Corporations (page 145) is more nearly accurate: "When a body of men are acting as a corporation, under color of apparent organization, in pursuance of some charter or enabling act, their authority to act as a corporation cannot be questioned collaterally."

To give a body of men assuming to act as a corporation, where there has been no attempt to comply with the provisions of any law authorizing them to become such, the *status* of a *de facto* corporation might open the door to frauds upon the public. It would certainly be impolitic to permit a number of men to have the *status* of a corporation to any extent merely because there is a law under which they might have become incorporated, and they have agreed among themselves to act, and they have acted, as a corporation. That was the condition in *Johnson* v. *Corser,* 34 Minn. 355, (25 N. W. Rep.

799,) in which it was held that what had been done was ineffectual to limit the individual liability of the associates. They had not gone far enough to become a *de facto* corporation. They had merely signed articles, but had not attempted to give them publicity by filing for record, which the statute required.

"Color of apparent organization under some charter or enabling act" does not mean that there shall have been a full compliance with what the law requires to be done, nor a substantial compliance. A substantial compliance will make a corporation *de jure*. But there must be an apparent attempt to perfect an organization under the law. There being such apparent attempt to perfect an organization, the failure as to some substantial requirement will prevent the body being a corporation *de jure;* but, if there be user pursuant to such attempted organization, it will not prevent it being a corporation *de facto*.

The title to chapter 29 is "An act in relation to the formation of co-operative associations." Appellant's counsel argues that the body of the act does not contain a single element of "co-operation," as that term is generally understood. But how it is generally understood he does not inform us. In a broad sense, all associations, whether corporations or partnerships, are co-operative, for all the members, either by their labor or capital, or both, co-operate to a common purpose. There is undoubtedly, in popular use of the terms, a more limited sense, though the precise limits are not well defined. There is no legal, as distinguishable from their popular, signification. In the Century Dictionary the term "co-operative society" is defined, "A union of individuals, commonly laborers or small capitalists, formed  *  *  *  for the prosecution in common of a productive enterprise, the profits being shared in accordance with the amount of capital or labor contributed by each member." Taking the distinctive feature of a co-operative society to be that it is made up of laborers or small capitalists, it is manifest that the chapter intends to deal with just that sort of associations. Not only does it contemplate that the operations of the corporations shall be local, but the capital stock is limited to $50,000, the stock which one member may hold to $1,000. No one can become a shareholder without the

consent of the managers, and no one is entitled to more than one vote.

The provisions in the body of the act are in accord with the title, and it is therefore not open to the objection made against it.

The purposes for which, under the act, corporations may be formed, are "of trade, or of carrying on any lawful mechanical, manufacturing, or agricultural business." The main purpose of the act being to enable men of small capital, or of no capital but their labor and their skill in trades, to form corporations, for the purpose of giving employment to such capital or labor and skill, the language expressing the purposes for which such corporations may be formed ought not to be narrowly construed. Giving a reasonably liberal meaning to the word "trade" in the act, it would include the buying and selling of real estate, and, upon a similar construction, the word "mechanical" would include the erection of buildings. The doing of the mason, or brick, or carpenter, or any other, work upon a building is certainly mechanical. There can be little question that corporations might be formed to do either of those kinds of work on buildings, and, that being so, there is no reason why they may not be formed to do all of them. There is no reason to claim that such a corporation must do its work as a contractor for some other person. It may do it for itself, and, as the act authorizes the corporation to "take, hold, and convey such real and personal estate as is necessary for the purposes of its organization," it may, instead of working for others as a contractor, make its profit by buying real estate, erecting buildings on it, and either selling or holding them for leasing.

The omission to state distinctly in the articles the place within which the business is to be carried on, though that might be essential to make it a *de jure* corporation, would not prevent it becoming one *de facto.*

The foundation for a *de facto* corporation having been laid by the attempt to organize under the law, the user shown was sufficient.

Judgment affirmed.

(Opinion published 53 N. W. Rep. 1150.)