OWEN et al. v. SHEPARD et al.[1]

(Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

No. 284.

1. EVIDENCE—BURDEN OF PROOF—EXISTENCE OF CORPORATION.

The burden is on defendants to prove the existence of a corporation, where, being sued individually, as doing business under a company name, they deny individual liability, and aver that the company was a corporation, and that the services were rendered to it.

2. CORPORATIONS—EXISTENCE—COLLATERAL INQUIRY.

The rule that the regularity of the organization of a corporation cannot be inquired into collaterally has no application where individuals sued for services deny personal liability, and set up the existence of a corporation, to which the services were rendered.

3. SAME—EVIDENCE—COMPETENCY.

It is not competent to prove the organization of a business corporation under the Illinois laws by the testimony of the two persons claiming to have formed it, to the effect that, being in St. Louis, they crossed to Illinois with a lawyer, there complied with the laws, and got a charter; it appearing that the Illinois law requires at least three incorporators, prescribes various steps requiring considerable time for their accomplishment, and makes the certificate of the secretary of state to the complete organization of a corporation the legal evidence of that fact.

In Error to the United States Court in the Indian Territory.

Thomas Marcum and George E. Nelson, for plaintiffs in error.

S. S. Fears, S. O. Hinds, and W. T. Hutchings, for defendants in error.

Before CALDWELL, Circuit Judge, and THAYER, District Judge.

CALDWELL, Circuit Judge. This suit was brought by the defendants in error, Shepard, Grove & Shepard, who are lawyers practicing in the Indian Territory, against the plaintiffs in error, Robert L. Owen and James E. Reynolds, to recover fees for legal services. There was a trial to a jury, and a verdict and judgment for the plaintiffs, and the defendants sued out this writ of error.

The errors chiefly relied on relate to the rulings of the lower court in giving and in refusing instructions upon the question whether the Indian Trading Company was a legally constituted corporation. The defendants were sued individually, the complaint alleging that they were "doing business under the style of the Indian Trading Company." The answer denied that the defendants were liable personally, and averred that the Indian Trading Company was a corporation, and the contention of the defendants upon the trial below was that any services performed by the plaintiffs were performed for the alleged corporation, and not for the defendants personally. The defendants conducted a mercantile business in the Indian Territory under the style of the Indian Trading Company, and they retained the plaintiffs to assist in some legal proceedings which were conducted in that name. The defendants disposed of their stock of goods, ceased to do business as merchants, and the

Indian Trading Company vanished. Under the pleadings upon which the case was finally tried, the burden rested on the defendants to show the plaintiffs' services were rendered to a corporation as claimed by them. The defendant Owen is a Cherokee, and the defendant Reynolds a Choctaw, Indian. They agreed to embark in the mercantile business on rather an extended scale, the business to be carried on at the town of South McAlester, in the Choctaw Nation. They were told they could carry on this business without any financial risk or liability beyond the capital actually invested if they would form a corporation and conduct the business in its name. They assert they did form a corporation called the Indian Trading Company, under the laws of Illinois. The law of that state governing the formation of corporations contains the following provisions:

"(2) Whenever any number of persons, not less than three nor more than seven, shall propose to form a corporation under this act, they shall make a statement to that effect under their hands, and duly acknowledged before some officer in the manner provided for the acknowledgment of deeds, setting forth the name of the proposed corporation, the object for which it is to be formed, its capital stock, the number of shares of which such stock shall consist, the location of the principal office, and the duration of the corporation, not exceeding however, ninety-nine years; which statement shall be filed in the office of the secretary of state. The secretary of state shall thereupon issue to such persons a license as commissioners to open books for subscription to the capital stock of said corporation at such times and places as they may determine; but no license shall be issued to two companies having the same name. (3) As soon as may be, after the capital stock shall be fully subscribed, the commissioners shall convene a meeting of the subscribers for the purpose of electing directors or managers, and the transaction of such other business as shall come before them. Notice thereof shall be given by depositing in the post office, properly addressed to each subscriber, at least ten days before the time fixed, a written or printed notice, stating the object. time and place of such meeting. * * * (4) The commissioners shall make a full report of their proceedings, including therein a copy of the notice provided for in the foregoing section, a copy of the subscription list, and the names of the directors or managers elected, and their respective terms of office, which report shall be sworn to by at least a majority of the commissioners, and shall be filed in the office of the secretary of state. The secretary of state shall thereupon issue a certificate of complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and seal of state, and the same shall be recorded in a book for that purpose, in the office of the recorder of deeds of the county where the principal office of such company is located. Upon the recording of the said copy, the corporation shall be deemed fully organized and may proceed to business. Unless such company shall be organized and shall proceed to business as provided in this act, within two years after the date of such license, then such license shall be deemed revoked, and all proceedings thereunder void." "(27) The certified copy of any articles of incorporation, and changes thereof, together with all indorsements thereon, under the great seal of the state of Illinois, shall be taken and received in all courts and places as prima facie evidence of the facts therein stated." 1 Rev. St. Ill. c. 32, tit. "Corporations."

There was no competent evidence to show that a single requirement of the statute quoted was complied with. All the evidence on the subject is that of the defendants, who testify, in substance. that they were advised the object they had in view could best be

accomplished by incorporating themselves under the laws of Illinois, and that, being in St. Louis, they crossed over the Mississippi river to East St. Louis, in Illinois, with a lawyer, and there complied with the laws of that state, and got a charter. The statement that they got a charter is a mere conclusion of law, having no probative force. It is not probable these Indians had a very accurate conception of what constituted a charter, or of the proper mode of obtaining it under the laws of Illinois. The two defendants only were present to form the corporation, and the statute requires not less than three nor more than seven persons. What the defendants did during their momentary stay in East St. Louis is not shown. The evidence required by the statute of Illinois to prove the existence of a corporation is the certificate of the secretary of state of the complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and seal of state, and, in addition to this, proof that such copy had been recorded in the office of the recorder of deeds of the county where the principal office of the company is located. "Upon the recording of the said copy," says the statute, "the corporation shall be deemed fully organized and may proceed to business." In Gent v. Insurance Co., 107 Ill. 652, 658, the court say:

"A corporation, until organized, has no being, franchises, or faculties. * * * Until organized as authorized by the charter, there is 'no corporation; nor does it possess franchises or faculties for it or others to exercise until it acquires complete existence."

If this alleged corporation ever had any legal existence, it was in the power of the defendants to furnish the proper evidence of the fact. They claim to be the original corporators, and as such they would be the proper custodians of the legal evidence of the incorporation of the company. They neither produced this evidence nor accounted for its absence. If the secretary of state had ever issued his certificate, and it had been lost, a certified copy could have been procured. The defendants probably made an abortive effort to form a corporation under the laws of Illinois, but it is highly probable that the artificial being which they attempted to bring into existence never had a legal birth; certainly there is not in this record any competent evidence to establish that fact.

The doctrine that the regularity of the organization of a corporation cannot be inquired into collaterally has no application to this case.

The defendants set up as an affirmative defense that the services sued for were performed, if at all, for a corporation named the Indian Trading Company, and not for the defendants as individuals or partners doing business under the style of the Indian Trading Company, as alleged by the plaintiffs. The defendants thus set up as a defense to the action the existence of the alleged corporation. Upon this issue we have seen the burden of proof rested on the defendants. The plaintiffs are not attacking the validity of the corporation collaterally; they are challenging the defendants

to prove their assertion that such a corporation ever had an existence. The company was not shown to be either a de facto or de jure corporation. The only semblance of a corporation was its name. But the name did not distinctly purport to be the name of a corporation. Individuals may carry on business under any name and style they may choose to adopt. The style of the firm need not, and often does not, express the name of any actual member of it. It need not contain any individual names at all. The name Indian Trading Company is equally appropriate for a partnership or for a corporation. By common usage the use of "company" is as applicable to partnerships and to unincorporated associations as to corporations. Poll. Partn. arts. 10, 11. The name, therefore, was no evidence that the company was a corporation. One cannot wink so hard as not to see that this so-called corporation was one of those elusive, evanescent, will-o'-the-wisp corporations existing only in name, and a fraud upon the laws of the state where it was attempted to be formed, and equally a fraud on the states or territories and their citizens in which it carried on its business. It is no uncommon thing nowadays for persons to do as these defendants did,—seek to acquire corporate life and power by a mere pretense of compliance with the law of a state in which they do not reside, and do not intend to carry on any business, in order that they may escape all liability for the hazards of the business in which they are engaged, and enjoy the privilege of litigating in the United States courts. These privileges are obtainable under existing laws and decisions of the courts, but not by simply adopting a supposed corporate name, or by a mere feigned compliance with the laws of the state of which it is claimed the corporation is a citizen. Montgomery v. Forbes, 148 Mass. 249, 19 N. E. 342; Hill v. Beach, 12 N. J. Eq. 31; Smith v. Machinery Co., 19 Fed. 826; Gas Co. v. Dwight, 29 N. J. Eq. 244, 248; Booth v. Wonderly, 36 N. J. Law, 250; Spell. Priv. Corp. p. 928, § 829, note 2; Demarest v. Flack, 128 N. Y. 205, 28 N. E. 645.

In view of the want of any competent evidence to establish the organization of the corporation, the instructions relating to its existence were probably too favorable to the plaintiff in error.

An exception was taken to that part of the charge in which the court told the jury "that in determining the value of an attorney's services it is proper to consider from the evidence the character and professional standing of the person rendering the service in question, as well as the nature and importance of the services rendered; and the very best means of adjusting this value are the opinions of those who, in earning and receiving compensation for them, have learned what legal services in their various grades are worth." This charge is supported by the opinion of this court in the case of Ward v. Kohn, 58 Fed. 462; Rogers, Exp. Test. p. 380, § 158.

We have carefully examined the other assignments of error, and find they are without merit. They are not of sufficient importance to justify a separate consideration. The judgment of the lower court is affirmed.