## HARRILL v. DAVIS et al.

(Circuit Court of Appeals, Eighth Circuit. March 2, 1909.)

### No. 2,805.

1. PARTNERSHIP (§ 41*)—CORPORATIONS (§ 225*)—INDIVIDUAL LIABILITY IN CASE OF FAILURE TO INCORPORATE—GENERAL RULE.

The general rule is that parties who associate themselves together and conduct a business for profit under a name adopted or used by them for that purpose are liable as partners for the debts they incur under that name.

This general rule governs if the name used be that of a supposed corporation which the associates have attempted but failed to organize according to law.

But a compliance by such associates with the statutes authorizing them to become a corporation exempts them from other individual liability than that prescribed by such laws for debts incurred after they become a corporation authorized to do business as such.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 56, 58; Dec. Dig. § 41;* Corporations, Cent. Dig. §§ 74, 864, 865; Dec. Dig. § 225.*]

2. PARTNERSHIP (§ 41*)—CORPORATIONS (§ 30*)—INDIVIDUAL LIABILITY—EXCEPTIONS TO GENERAL RULE.

Two exceptions to the general rule that corporators failing to organize legally are individually liable are: (1) Where such associates procure a charter or file articles of incorporation under a general enabling act, secure thereby the color of a corporation, believe they are such, and use the supposed franchise of their corporation, and third parties deal with them as a corporation, they become a de facto corporation, which exempts them from individual liability to such parties, although there are defects in their incorporation. (2) Projectors of a corporation to be organized who inform third parties that they are contracting for such a corporation and assure them that the obligations incurred will become the obligations of the future corporation may escape individual liability to such third parties for obligations thus incurred for services necessary to effect the corporate organization and for machinery and other property necessary to the commencement of the contemplated business of the corporation, where the corporation is subsequently organized, takes the benefit of such contracts, and assumes the obligations.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 56, 58; Dec. Dig. § 41;* Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

3. PARTNERSHIP (§ 44*)—BURDEN OF PROOF ON CLAIMANTS OF EXEMPTION FROM LIABILITY.

When the fact appears that parties associated themselves together and incurred liabilities in the conduct of a business under a certain name, the

legal presumption is that they are governed by the general rule and are liable as partners, and the burden is on them to prove that they are duly incorporated or that they fall under some exception to the general rule.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 62, 62½; Dec. Dig. § 44.*]

4. CORPORATIONS (§ 221*)—CORPORATION DE FACTO—COLOR OF ORGANIZATION SUCH AS CHARTER OR FILING ARTICLES REQUISITE.

Color of legal organization as a corporation, such as a charter or the filing of articles of incorporation under some law, and user of the supposed corporate franchise in good faith, are indispensable to the existence of a de facto corporation which will exempt from individual liability those who actively conduct it.

Neither the execution of articles which are not filed, nor statements nor beliefs of the promoters that they are a corporation, nor the treatment of themselves by themselves and by those who deal with them as a corporation, nor all these together, will exempt those who actively conduct the business under the assumed name of such a nonexistent corporation from individual liability for the debts they incur.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 221.*]

5. CORPORATIONS (§ 34*)—CORPORATION DE FACTO—ESTOPPEL FROM DENYING EXISTENCE INAPPLICABLE IN ABSENCE OF COLOR OF INCORPORATION.

One who deals with a corporation de facto may be estopped from denying its existence as a corporation de jure.

But no one is estopped by dealing with parties as a corporation who are actively conducting business for profit under an assumed corporate name when they have no charter, have filed no articles of incorporation, and procured no color of legal organization as a corporation, from denying that they constitute a corporation of any kind or from enforcing their individual liability for the debts they incur under such a name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 84, 91; Dec. Dig. § 34.*]

6. CORPORATIONS (§ 372*)—ULTRA VIRES—CONSTRUCTING AND OPERATING COTTON GIN BEYOND POWERS OF BROKERAGE COMPANY.

A corporation organized for the purpose of "buying, selling, leasing and dealing in lands, securities, bonds, notes, stocks and other negotiable paper and also buying and selling general merchandise" has no corporate power to build and operate cotton gins or to subscribe for stock in and form another corporation for that purpose.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 372.*]

7. STATUTES (§ 226*)—CONSTRUCTION—ADOPTION ADOPTS INTERPRETATION.

The adoption of a statute previously in force in some other jurisdiction is presumed to be the adoption of the interpretation thereof which had been theretofore placed upon it by the judicial tribunal whose duty it was to construe it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 256, 307; Dec. Dig. § 226.*]

8. ELECTION OF REMEDIES (§ 12*)—PURSUIT OF INCONSISTENT MISTAKEN REMEDY NO DEFENSE TO TRUE REMEDY.

The fatuous choice of a fancied remedy that never existed, and the futile pursuit of it until the court adjudges that it never had existence, is no defense to an action to enforce an actual remedy inconsistent with that first invoked.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 15; Dec. Dig. § 12.*]

9. CORPORATIONS (§§ 22, 221*) — PROMOTERS INDIVIDUALLY LIABLE — FACTS — CONCLUSIONS.

The four defendants agreed in April or June, 1902, to take specified shares in a $10,000 enterprise for the purpose of building a cotton gin

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and carrying on the business of buying, ginning, and selling cotton, and to organize a corporation for this purpose. In June or July, 1902, they commenced to buy material and labor of the plaintiff and to build their cotton gin. In September, 1902, they commenced to buy cotton, and in the first days of October to operate their cotton gin. They transacted a business with the plaintiff consisting of the purchase of lumber, materials, and labor for their buildings and of dealing in cotton with it which amounted to several tens of thousands of dollars, and they remained indebted to it over $5,000, of which $4,700 was incurred prior to December 22, 1902, when they first filed articles of incorporation in one of two places required by the statute. During all this time they treated themselves, and the plaintiff treated them, as a corporation.

*Held:* The defendants did not become a corporaton de jure because they failed to file their articles in both the places required by the statute; (2) they did not become a corporation de facto before they filed their articles on December 22, 1902, to such an extent as to exempt them from individual liability because they did not before that time secure any color of legal organization as a corporation under any charter or enabling act; (3) they were liable individually as partners for that part of the plaintiff's claim incurred prior to the filing of their articles.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 62, 64; Dec. Dig. §§ 22, 221.*

Acts of corporators and promoters, see note to Yeiser v. United States Board & Paper Co., 46 C. C. A. 576.]

(Syllabus by the Court.)

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 104 S. W. 573.

The Western Investment Company brought this action for a balance due it upon an account for lumber and materials sold, cotton handled, and services rendered to Walter B. Mann, Frank M. Davis, Robert S. Davis, and James G. Knight, as partners doing business under the firm name the "Coweta Cotton & Milling Company." The defendants denied the partnership and their liability, and averred that the indebtedness in question was that of the milling company and that that company was a corporation. The evidence established these facts: One Naylor was the president, and Frank M. Davis the vice president and general manager, and Naylor, Davis, Edwards, and Wallace were directors, of the Western Investment Company. There were 1,000 shares of the capital stock of that company, of which Naylor owned 520, Davis, Edwards, and Wallace 80 each.

In April or June, 1902, Mann, Frank M. Davis, Robert S. Davis, and Knight agreed to embark in a $10,000 enterprise for the purpose of building a cotton gin, buying, ginning, and selling cotton, that Mann should take two-fifths of this undertaking and the other three members one-fifth each, and that Frank M. Davis should take his fifth for the Western Investment Company. Neither the Western Investment Company nor any of its directors ever authorized Davis to take this stock on its behalf, and he never reported to the company that he had so taken it until January, 1903, after the indebtedness here in question had been incurred, and at about the time when the milling company ceased to operate its gin. He testified that he had some conversation with Edwards and Wallace about his taking this stock for the corporation, but that he never mentioned it to Naylor, the president, who held a majority of the stock. In February, 1903, after the milling company had ceased to operate its gin, Davis caused an entry of a credit of $1,150 to that company to be entered upon the account books of the investment company on account of this stock, and the investment company subsequently repudiated this charge and charged the $1,150 back to the milling company.

In April or June, 1902, F. M. Davis, on behalf of the investment company, agreed with the other defendants to furnish to them materials to build the

cotton gin, and in June or the following month the plaintiff commenced to furnish materials and to render its services for this purpose, which were received by Knight as the representative of the defendants and used by him to construct the cotton gin and to carry on the business which the defendants were conducting. The price of these materials and services were charged upon the books of the investment company to Coweta Gin Company and the Coweta Gin cotton account.

On September 3, 1902, three of the defendants met and signed articles of incorporation as the "Coweta Cotton & Milling Company" and a declaration of the purpose of the incorporation, which the statutes required to be verified by the signers and to be filed with the clerk of the Court of Appeals and with the clerk of the judicial district in which the contemplated corporation was to do business. This declaratioin was verified by Mann on November 10, 1902, and by Frank M. Davis on December 10, 1902, and it was filed with the clerk of the Court of Appeals on December 22, 1902, and was never filed elsewhere. The balance of indebtedness due to the investment company is about $5,000 and interest, and all of it but a few hundred dollars was incurred before the articles of incorporation were filed. Frank M. Davis, as general manager of the investment company, treated the milling company as a corporation all the time during which this indebtedness was contracted, and never charged any of it to himself or his associates. He and other witnesses testified that the milling company received the benefit of all materials and services furnished by the plaintiff, and that the defendants received no benefit from them, and that they acted in good faith and without any intent to deceive or defraud any one. The entire amount of money paid into the milling company by the corporators was not more than $4,950. That company never had any stock book and never issued any stock. The defendants commenced to buy cotton and to operate their gin under the name of the milling company in October, 1902, and they ceased to operate their cotton gin in January, 1903. Knight managed the construction of the cotton gin and the other improvements for the defendants and the business of the defendants and the milling company from June, 1902, when he commenced the buildings, until January, 1903. About $3,000 of the claim in suit was for lumber and labor furnished, and for this amount the investment company filed a claim for a mechanic's lien verified by the successor of Frank M. Davis in May, 1903, in which there is a statement that the milling company is a corporation. Upon this state of facts the trial court directed a verdict for the defendants, and refused to instruct the jury that the plaintiff was entitled to recover the portion of the debt incurred prior to the filing of the articles of incorporation on December 22, 1902.

R. C. Allen (J. C. Pinson, on the brief), for plaintiff in error.

Geo. A. Murphey (S. M. Rutherford, W. T. Hutchings, and W. P. Z. German, on the brief), for defendants in error.

Before SANBORN and VAN DEVANTER, Circuit Judges. and W. H. MUNGER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The patent and indisputable facts in this case are that the four defendants associated themselves together, and from June, 1902, until December 22, 1902, actively engaged in purchasing lumber, material, and labor of the plaintiff, and in constructing a cotton gin under the name "The Coweta Gin Company," and in conducting the business of buying, selling, and ginning cotton for profit under the name "The Coweta Cotton & Milling Company," and that during this time they incurred more than $4,700 of the indebtedness of $5,145.48 for which this action was brought. On December 22, 1902, they made their first real attempt to incorporate, and for the first time took on the color or appearance of a corporation. On that day they filed articles

of incorporation with the clerk of the Court of Appeals, but they never filed any duplicate of them with the clerk of the judicial district in which their place of business was located, as required by the statutes in order to constitute them a legal corporation and to authorize them to do business as such. Act Feb. 18, 1901, c. 379, 31 Stat. 794; Mansfield's Dig. Laws Ark. §§ 960, 968, 979.

The general rule is that parties who associate themselves together and actively engage in business for profit under any name are liable as partners for the debts they incur under that name. It is an exception to this rule that such associates may escape individual liability for such debts by a compliance with incorporation laws or by a real attempt to comply with them which gives the color of a legal corporation, and by the user of the franchise of such a corporation in the honest belief that it is duly incorporated. When the fact appears, as it does in the case at bar, by indisputable evidence that parties associated and knowingly incurred liabilities under a given name, the legal presumption is that they are governed by the general rule, and the burden is upon them to prove that they fall under some exception to it. Owen v. Shepard, 59 Fed. 746, 8 C. C. A. 244; Wechselberg v. Flour City National Bank, 64 Fed. 90, 94, 12 C. C. A. 56, 60, 61, 26 L. R. A. 470; Clark v. Jones, 87 Ala. 474, 6 South. 362.

Counsel for the defendants argue with much force and persuasiveness that they escape liability because they became a corporation de facto, although they concede that they never became a corporation de jure, and in support of this position they cite, among other cases: Wells Company v. Gastonia Cotton Mfg. Co., 198 U. S. 177, 25 Sup. Ct. 640, 49 L. Ed. 1003; Andes v. Ely, 158 U. S. 312, 322, 15 Sup. Ct. 954, 39 L. Ed. 996; New Orleans Debenture Redemption Co. v. Louisiana, 180 U. S. 320, 327, 21 Sup. Ct. 378, 45 L. Ed. 550; Gartside Coal Co. v. Maxwell (C. C.) 22 Fed. 197; Johnson v. Okerstrom, 70 Minn. 303, 73 N. W. 147; Tennessee Automatic Lighting Company v. Massey (Tenn. Ch. App.) 56 S. W. 35; Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 Am. St. Rep. 552; Doty v. Patterson, 155 Ind. 60, 56 N. E. 668; Merchants' National Bank v. Stone, 38 Mich. 779; Gow v. Collin Lumber Company, 109 Mich. 45, 66 N. W. 676, 678; Eaton v. Aspinwall, 19 N. Y. 119; Leonardsville Bank v. Willard, 25 N. Y. 574; Cahall v. Citizens' Mutual Bldg. Ass'n, 61 Ala. 232; Fay v. Noble, 7 Cush. (Mass.) 188, 192, 193; Snider Sons' Company v. Troy, 91 Ala. 224, 8 South. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887; Cochran v. Arnold, 58 Pa. 399, 404; Laflin & Rand Powder Co. v. Sinsheimer, 46 Md. 315, 321, 24 Am. Rep. 522; Rutherford v. Hill, 22 Or. 218, 29 Pac. 546, 17 L. R. A. 549, 29 Am. St. Rep. 596. But in every one of these authorities articles of incorporation had been filed under a general enabling act, or a charter had been issued and there had been a user of the franchise of the supposed corporation which had been colorably created by the filing of the articles or the issue of the charter before the indebtedness in question was created, while nothing of this nature had been done before the debt for the $4,700 which we are now considering was incurred. The authorities which

have been recited rest upon the proposition that where parties procure a charter or file articles of association under a general law, thereby secure the color of a legal incorporation, believe that they are a corporation, and use the supposed franchise of the corporation in good faith, and third parties deal with them as a corporation, they become a corporation de facto and exempt from individual liability to such third parties, although there are unknown defects in the proceedings for their incorporation. The statement of Morawetz on Corporations, at section 748, upon which counsel seem to rely, that:

"If an association assumes to enter into a contract in a corporate capacity, and the party dealing with the association contracts with it as if it were a corporation, the individual members of the association cannot be charged as parties to the contract, either severally or jointly, or as partners. This is equally true whether the association was in fact a corporation or not, and whether the contract with the association in its corporate capacity was authorized by the Legislature or prohibited by law, or illegal"

—is too broad to be sound. Parties who actively engage in business for profit under the name and pretense of a corporation which they know neither exists nor has any color of existence may not escape individual liability because strangers are led by their pretense to contract with their pretended entity as a corporation. In such cases they act as the agents of a principal that they know does not exist, and they are liable under a familiar rule, because there is no responsible principal. 2 Kent's Commentaries (14th Ed.) 630; Queen City Furniture & Carpet Co. v. Crawford, 127 Mo. 356, 364, 30 S. W. 163. The burden is not on the strangers who deal with them as a corporation, but on themselves who act under the name of a pretended corporation, to see that it is so organized that it exempts them from individual liability, and if they fail in this they must pay the liabilities they incur, even in the absence of fraud or bad faith, upon the salutary principle that where one of two parties must suffer he must bear the loss whose breach of duty caused it.

There are cases in which stockholders who took no active part in the business of a pretended corporation which was acting without any charter or filed articles, who supposed that the corporation was duly organized, have been held exempt from individual liability for the debts it incurred; but if they had been actively conducting its business with knowledge of its lack of incorporation, those decisions must have been otherwise. Seacord v. Pendleton, 55 Hun, 579, 9 N. Y. Supp. 46; Fuller v. Rowe, 57 N. Y. 23, 26.

Neither the hope, the belief, nor the statement by parties that they are incorporated, nor the signing of articles of incorporation which are not filed, where filing is requisite to create the corporation, nor the user of the pretended franchise of such a nonexistent corporation, will constitute such a corporation de facto as will exempt those who actively and knowingly use its name to incur obligations from their individual liability to pay them. Color of legal organization as a corporation under some charter or law and user of the supposed corporate franchise in good faith are indispensable to such exemption.

Under the general law of Arkansas in force in the Indian Territory, the filing of articles of incorporation with the clerk of the Court of Appeals was a sine qua non of any color of a legal corporation. Without that there was not, and there could not be, an apparent corporation or the color of a corporation. Agreements to form one, statements that there was one, signed articles of association to make one, acts as one, created no color of incorporation, because there could be no incorporation or color of it under the law until the articles were filed. Johnson v. Corser, 34 Minn. 355, 25 N. W. 799; Finnegan v. Noerenberg, 52 Minn. 239, 243, 244, 53 N. W. 1150, 1151, 18 L. R. A. 778, 38 Am. St. Rep. 552; Taylor on Private Corporations, p. 145, Roberts Mfg. Co. v. Schlick, 62 Minn. 332, 64 N. W. 826. In Finnegan v. Noerenberg, supra, Chief Justice Gilfillan well said:

"To give to a body of men assuming to act as a corporation, where there has been no attempt to comply with the provisions of any law authorizing them to become such, the status of a de facto corporation, might open the door to frauds upon the public. It would certainly be impolitic to permit a number of men to have the status of a corporation to any extent merely because there is a law under which they might have become incorporated, and they have agreed among themselves to act, and they have acted, as a corporation. That was the condition in Johnson v. Corser, 34 Minn. 355, 25 N. W. 799, in which it was held that what had been done was ineffectual to limit the individual liability of the associates. They had not gone far enough to become a de facto corporation. They had merely signed articles, but had not attempted to give them publicity by filing for record, which the statute required."

The defendants cannot escape individual liability for the $4,700 on the ground that the Coweta Cotton & Milling Company was a corporation de facto when that portion of the plaintiff's claim was incurred, because it then had no color of incorporation, and they knew it and yet actively used its name to incur the obligation. Owen v. Shepard, 8 C. C. A. 244, 59 Fed. 746; Wechselberg v. Flour City National Bank, 64 Fed. 90, 94, 12 C. C. A. 56, 60, 61, 26 L. R. A. 470; Abbott v. Omaha Smelting & Refining Co., 4 Neb. 416, 423, 424; Garnett v. Richardson, 35 Ark. 144; Johnson v. Corser, 34 Minn. 355, 357, 25 N. W. 799; Queen City Furniture & Carpet Co. v. Crawford, 127 Mo. 356, 364, 30 S. W. 163; Bigelow v. Gregory, 73 Ill. 197, 202; Parsons on Partnership, p. 544; Hill v. Beach, 12 N. J. Eq. 31; Kaiser v. Lawrence Savings Bank, 56 Iowa, 104, 8 N. W. 772, 41 Am. St. Rep. 85; Pettis v. Atkins, 60 Ill. 454; Coleman v. Coleman, 78 Ind. 344; Lawler v. Murphy, 58 Conn. 313, 20 Atl. 457, 8 L. R. A. 113; Hurt v. Salisbury, 55 Mo. 310, 314; Beach on Private Corporations, § 16, p. 25; Martin v. Fewell, 79 Mo. 401, 411; Smith v. Warden, 86 Mo. 382, 399; McVicker v. Cone, 21 Or. 353, 28 Pac. 77.

Another contention is that the defendants are released from liability because the materials and labor for which the $4,700 became due were furnished to them while they were promoting the organization of the corporation for the future corporation, and that the latter has received the benefit of them and ratified their purchase; and in support of this position they cite Whitney v. Wyman, 101 U. S. 396, 25 L. Ed. 1050; Little Rock & Ft. Smith R. R. Co. v. Perry, 37 Ark. 164; Paxton Co. v. First National Bank, 21 Neb. 621, 33 N. W. 271,

59 Am. St. Rep. 852; Stanton v. New York R. R. Co., 59 Conn. 272, 22 Atl. 300, 21 Am. St. Rep. 110; Davis v. Montgomery, 101 Ala. 127, 8 South. 496; Reichwald v. Commercial Hotel Co., 106 Ill. 439; Wall v. Niagara Co., 20 Utah, 474, 59 Pac. 399; Lancaster Co. v. Murray Co., 19 Tex. Civ. App. 110, 47 S. W. 387; Kaeppler v. Redfield Co., 12 S. D. 483, 81 N. W. 907; Chase v. Redfield, 12 S. D. 529, 81 N. W. 951. In Whitney v. Wyman, after the articles of incorporation were signed, but before they were filed, three promoters of the incorporation wrote to the plaintiff that the company was so far organized that by direction of its officers they ordered seven lathes and the necessary fixtures for clasping. These lathes were necessary to enable the corporation to commence its contemplated business, were received and used by it, and the Supreme Court held that the promoters were not individually liable for their purchase price.

Little Rock & Ft. Smith R. R. Co. v. Perry was an action against the corporation, and the liability of the promoters was not in issue. The court declared that the rule here invoked grew out of decisions in equity that contracts necessarily made by promoters on behalf of a future corporation in order to obtain its charter or to complete its organization would be specifically enforced against it, as in Stanley v. Birkenhead Railway Co., 9 Simons, 264, 16 Eng. Ch. Rep. 264, where the projectors of a railroad seeking a charter agreed with a landed proprietor, on behalf of the proposed company, in consideration that he would withdraw his opposition to their bill, to pay him £20,000 for the portion of his estate required by the road, and the court enforced the specific performance of this obligation against the corporation when the charter had been granted, and, as in Edwards v. Grand Junction Railway Company, 1 Mylne & C. 650, Preston v. Liverpool, Manchester, etc., Railway Co., 7 Eng. L. & Eq. 124, Webb v. Direct London & Portsmouth Railway Company, 9 Hare, 129, Low v. Ct. & Passumpric Railway, 45 N. H. 375, which are there cited, and the Arkansas court held that in order to recover of such a corporation the plaintiff must show "either an express promise of the new company, or that the contract was made with persons then engaged in its formation and taking preliminary steps thereto, and that the contract was made on behalf of the new company, in the expectation on the part of the plaintiff and with the assurance on the part of the projectors that it would become a corporate debt, and that the company afterwards entered upon and enjoyed the benefit of the contract, and by no other title than that derived through it." But there is no evidence that the materials and labor furnished to the defendants prior to December 22, 1902, were sold by the plaintiff with the assurance on their part, or with the expectation on its part, that their price would not be paid by them, but would become the debt or obligation of a corporation to be organized in the future. On the other hand, Davis, who sold these articles for the plaintiff, and Knight, who bought them for the defendants, both testified that in the purchase and the sale of all of them they treated themselves as a corporation before, as completely as after, the filing of their articles. The rule of law here invoked applies to contracts preliminary and incidental to the organization or to the commencement of the business of a con-

templated corporation, and this debt for $4,700 was not the result of any such contract. It is part of the balance of an account of many tens of thousands of dollars which arose out of the conduct of a business preliminary, not to its commencement, but to its close. The business of the defendants was the buying and ginning of cotton. They commenced to construct their buildings in June, to buy cotton in September, to operate their gin in the first days of October, they filed their articles on December 22d, and ceased to operate their gin in the following January. They cannot escape liability for debts incurred in this business prior to December 22d on the ground that their construction of buildings and their dealing in and ginning cotton for two months and a half were necessary preliminaries to the organization of their corporation or to the commencement of their business, nor on the ground that the claim of the plaintiff was incurred on their assurance that it was for and should become the debt of a corporation to be formed, because these grounds are not sustained by the evidence.

Counsel insist that the defendants are not liable here because one who deals with a corporation de facto is estopped from denying its existence as a corporation; but the true meaning and legal effect of this rule is that such a dealer is estopped from denying its existence on the ground that it was not legally incorporated. One who deals with parties who masquerade under a name which represents no corporation de facto is no more estopped from denying that it is a corporation than he would be from denying that they constituted or acted for the Union Pacific Railroad Company, or any other well-known corporation, when they did not. The fact that the plaintiff dealt with and treated the Coweta Cotton & Milling Company as a corporation did not estop it from denying that it was such before the defendants filed their articles of incorporation, because it was not a corporation de facto before that time and because the indispensable elements of an estoppel in pais, ignorance of the truth and absence of equal means of knowledge of it by the party who claims the estoppel, and action by the latter induced by the misrepresentation of the party against whom the estoppel is invoked, do not exist in the case at bar. Bigelow on Estoppel (4th Ed.) p. 679. The plaintiffs did not, and the defendants did, represent that the milling company was a corporation when it was not. The defendants had better means of knowledge of the fact than the plaintiff, and they knew it was not a corporation, and they were not induced to act on any representation of the plaintiff that it was such, or by its treatment of it as such.

Nor was the plaintiff estopped by the fact that its general manager stated under oath in its claim for a lien in May, 1903, that the milling company was a corporation, first, because the defendants were not induced to take any action by this statement from which they can suffer any injury by the proof of the truth, and, second, because one is not estopped from pursuing his true legal remedy by a mistaken attempt to pursue a supposed remedy that does not exist. Standard Oil Company v. Hawkins, 20 C. C. A. 468, 472, 74 Fed. 395, 398, 399, 33

L. R. A. 739; Barnsdall v. Waltemeyer, 73 C. C. A. 515, 520, 142 Fed. 415, 420; Bunch v. Grave, 111 Ind. 351, 12 N. E. 514, 517.

It is said that the plaintiff is estopped from denying the existence of the defendant's supposed corporation because it was one of its promoters and stockholders, but the evidence fails to convince us that it was ever either. F. M. Davis was the general manager of the plaintiff. He testified that in June, 1902, he agreed with the other defendants to take a $2,000 share for the plaintiff in a corporation to be organized with a capital of $10,000 for the purpose of ginning and dealing in cotton, that Mann agreed to take a $4,000 share, R. S. Davis and James G. Knight a share of $2,000 each, that in September he signed the articles of incorporation and subscribed for this stock, that the other defendants also subscribed, that these subscribers paid the first assessment of $3,750 on $10,000 of the stock in the fall of 1902, that the second assessment of $2,000 was made in January, 1903, that he never reported this stock to the plaintiff until January, 1903, but that in the summer and fall of 1902 he talked with Edwards and Wallace, two of the directors, who had 80 shares of stock each in the plaintiff, about this stock which he was to take and which he had taken, that the plaintiff and they acquiesced in his action and told him to do the best he could with it, but that they did not direct or instruct him to take the stock or agree that he should take it, and that he did not talk with the president, who was the owner of the majority of the stock of the plaintiff, although another witness testified that some time in the fall of 1902 he told Naylor that Davis had taken stock in the milling company for the plaintiff. Davis, however, subscribed for the stock in his own name, and the plaintiff did not. He testified that he paid the first assessment in the fall of 1902, but he never charged the plaintiff and credited himself with that payment; but, on the contrary, on February 23, 1903, after the milling company had ceased to operate its gin, he caused an entry to be made on the books of the investment company charging it and crediting the milling company with $1,150, the amount of the two assessments on his stock, an entry which the plaintiff subsequently repudiated. There are two reasons why, under the evidence in this record, the plaintiff never became a holder, either in law or in equity, of any share in the defendant's enterprise or company, either as a stockholder or otherwise. In the first place, the construction and operation of a cotton gin was beyond the powers of the plaintiff corporation, the nature of whose business was declared and limited by its articles to "buying, selling, leasing and dealing in lands, securities, bonds, notes, stocks and other negotiable paper, and also buying and selling general merchandise." In the second place, if by any conceivable interpretation the construction and operation of a cotton gin and the formation of the corporation, and the taking of stock therein to accomplish that purpose, could be deemed to be within the powers of this corporation, they are so far beyond the scope of its ordinary business that a general manager could be authorized to commit his corporation to them only by the express authority of its board of directors, or of its principal officers, after a full disclosure to them of all the facts relating to the proposed enterprise, and the desultory

talks which Davis had with the two directors fall far short of any evidence of such authority.

Much is made in argument of the testimony of Davis and Knight that they acted in good faith, that the defendants never received any benefit from the materials and labor for the purchase price of which the plaintiff sues, but good faith and the use of a name which they know represents no corporation as the name of a corporation under which they do business creates a partnership, and neither a corporation de jure nor de facto. And the defendants had all the benefit there was from the materials and labor furnished by the plaintiff, for the milling company never issued any stock, and these defendants owned their respective shares in its property, and whatever it had they had, and, as far as they have not disposed of it, they still have. The fact is that during this entire transaction while Davis was the general manager of the plaintiff he was the partner of the defendants, and, in all transactions between the plaintiff and the defendants, was pecuniarily interested adversely to his principal.

The sum of the whole matter is that the defendants agreed in April or June, 1902, to take certain shares in a $10,000 enterprise for the purpose of building a cotton gin, and buying, ginning, and selling cotton, and to organize a corporation to carry on this business they bought between June and December 22, 1902, materials and labor with which they built the cotton gin, and between September 15th and December 22d operated their cotton gin and carried on the business of buying, ginning, and selling cotton with the plaintiff to the amount of several tens of thousands of dollars, and there remains a balance of about $4,700 due the plaintiff on this account. They never issued any stock, but in September, November, and December they signed articles of incorporation which they filed with the clerk of the Court of Appeals on December 22, 1902. During this time they treated themselves and the plaintiff dealt with them as a corporation. They represented themselves to be a corporation when they knew they were not; under the name of a corporation which did not exist they purchased these goods and services.

And our conclusion is that the defendants never became a corporation de facto prior to December 22, 1902, that they never became a corporation de jure, that the indebtedness here in question was not incurred under any promise or assurance of the defendants as promoters that it should become the obligation of a corporation to be formed, that a large part of it was incurred in the conduct of a general commercial business, and not to prepare for the commencement of such a business or for the organization of a corporation, and that the trial court below should have instructed the jury that the defendants were individually liable for that portion of the plaintiff's claim which was incurred prior to December 22, 1902. Its failure to do so was a fatal error which necessitates a reversal of the judgments below.

In view of the conclusion which has now been reached, it is unnecessary to discuss at length or to determine other questions which are presented in this record. It is sufficient to say regarding the portion of the plaintiff's claim incurred subsequent to December 22, 1902, that while there is a conflict of authority upon the question whether

or not incorporators or stockholders remain personally liable after the filing of articles in one office only where the statute requires them to be filed in two offices as a condition of incorporation or of the commencement of business (Mokelumne Hill Canal & Mining Co. v. Woodbury, 14 Cal. 265, 267), the statute under which this case arose was brought into the Indian Territory from the state of Arkansas, and the Supreme Court of that state had held, before it was adopted in the Indian Territory, that such corporators or stockholders remain individually liable under this statute unless and until their articles of incorporation are filed in both offices. Garnett v. Richardson, 35 Ark. 144. This conclusion is sustained by eminent authority (Wechselberg v. Flour City National Bank, 12 C. C. A. 56, 60, 61, 64 Fed. 90, 94, 26 L. R. A. 470, and authorities there cited), and it is an established rule of statutory construction that the adoption of a statute previously in force in some other jurisdiction is presumed to be the adoption of the interpretation thereof which had been theretofore placed upon it by the judicial tribunal whose duty it was to construe it. Black, Interpretation of Laws, p. 159, § 70; McDonald v. Hovey, 110 U. S. 619, 628, 4 Sup. Ct. 142, 28 L. Ed. 269; Sanger v. Flow, 1 C. C. A. 56, 58, 48 Fed. 152, 154; Blaylock v. Incorporated Town of Muskogee, 54 C. C. A. 639, 117 Fed. 125.

The judgments of the courts below must be reversed, and the case must be remanded to the proper court for a new trial; and it is so ordered.